IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1882.

## Elizabeth B. Biddle's Appeal.

A testatrix bequeathed all her property to B., in trust to collect and receive the income and interest thereof for her own use during her life, directing the principal to be paid after B.'s death to certain charities. Among the assets were certain shares in an insurance company. Less than five months after the death of said testatrix said insurance company resolved to increase its capital one-third by offering to its stockholders the option to subscribe at par to the stock of the company, in the proportion of one share for every two shares held. Every person exercising this option was to pay to the company for each share taken, in addition to the par value thereof, another like sum, which was to be added to the surplus fund of the company. B. sold the options in the market. The market value of the stock of the company was not shown to have varied between testatrix's death and the issuing of the new stock, and but a very slight diminution in said value took place after said issue. The books of the company showed, however, a diminution in the value of each share as computed by dividing the capital and surplus of the company by the number of existing shares before and after the issue of the new stock. B. contended that she was entitled to the proceeds of the options sold by her after deducting held by her in trust. *Held,* that B. was not so entitled, and that the whole proceeds of the options were to be accounted capital and not income.

January 3d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1881, No. 58.

[278]

Appeal of Elizabeth B. Biddle from a decree of the said court, dismissing her exceptions to and confirming the adjudication of the Auditing Judge upon the account of the executor of the estate of Mary Condy, deceased.

The facts were as follows :—Mary Condy died June 29th 1880, having by her will devised and bequeathed all her estate real and personal to her cousin Elizabeth B. Biddle, in trust to collect and receive the income and interest thereof for her own use during her life and at her death the principal of her said estate to be divided equally between the Protestant Episcopal Hospital and Christ Church Hospital. Among the property of the testatrix at the time of her death was 108 shares of the capital stock of the Insurance Company of North America.

On November 15th 1880, a meeting of the stockholders of the said insurance company was held, at which it was resolved to increase the capital stock from $2,000,000 to $3,000,000 by issuing 100,000 shares at $10 per share in the proportion of one share for each two shares held by the stockholders, the latter to pay $10 per share for each share of the new stock, and also $10 per share for the privilege of subscribing ; the proceeds of which privilege to be added to the surplus fund of the company. Any shareholder not disposed to subscribe for such new stock on these terms had the right of selling his subscription privilege in the open market.

This increase of the capital stock did not cause any serious diminution in the market value of the old stock, but resulted in a loss in the intrinsic or book value thereof of 75 cents per share.

The executor, instead of exercising his privilege of subscribing for the new stock, sold the privilege and realized the sum of $533.25 therefor.

The life tenant claimed that as the diminution in value of the 108 shares belonging to the trust estate caused by the transaction, was only 75 cents per share, she, the life tenant, was entitled to receive, as income, the proceeds of sale of the said privilege, $533.25, less 75 cents per share on the 108 shares, viz., the sum of $452.25.

The Auditing Judge (HANNA, P. J.) refused to allow the claim, saying, in his adjudication :—

" There was no dividend declared, either in stock or a share of the surplus fund of the insurance company, but the stockholders agreed among themselves simply to increase the capital stock of the company, and also the surplus fund each to the extent of $1,000,000. Each stockholder was to pay $20 for a new share. This was all he received, and no portion of the surplus fund. That these new shares which the decedent's estate would be entitled to would be a part of the principal

estate, seems clear. And if accountant had elected to subscribe for the stock, he could only take 'principal' to pay for them, and not 'income,' for the latter belonged to the legatee for life. If this be so, then it follows that the money realized by the sale of the option to subscribe belongs to the 'principal' of the estate. We think that Moss's Appeal, 2 Norris 264, determines the question in favor of the residuary legatees."

Exceptions filed by Elizabeth B. Biddle to this adjudication were dismissed by the court, and the adjudication was confirmed. (No opinion was filed.) Elizabeth B. Biddle thereupon took this appeal, assigning for error the decree of the court.

*Edward Hopkinson*, for the appellant.—The proceeds of the right to subscribe for the new stock, in so far as the intrinsic value of the stock already belonging to the testatrix's estate was not diminished, represented profit, or income, and not capital. It was well known, when the insurance company passed the resolution, that the privilege to subscribe for new stock at $10 per share would sell at a premium in the market; and the transaction was equivalent to a declaration of a dividend in the amount of such premium. Such a dividend would of course go to to the life-tenant. That the fund realized from the sale of the option to subscribe is income and not capital was squarely decided in Wiltbank's Appeal, 14 P. F. Smith 256, in which case the facts are precisely similar with the present case. The later case of Moss's Appeal, 2 Norris 264, is not in conflict with Wiltbank's Appeal, but introduced the qualification that if the issuing of the new stock is not based on actual profits, but impairs the intrinsic value of the old capital to the extent of the amount of the new issue, the value of the right to subscribe belongs to the remainder-man and not to the life-tenant. PAXSON, J., in delivering the opinion of the court in Moss's Appeal, says: " It thus appears, that for each dollar gained by the sale of the options, a corresponding dollar was taken from the value of the original shares. If the company had gone into liquidation the day before the issue of the new stock, the 100 shares of original stock would have realized $24,000. If it had gone into liquidation the day after, the 140 shares [the increment being 40 shares] would have realized the same sum. Where, then, was the profit?" The difference in this case is that the impairment of the intrinsic or liquidating value of the original capital by the new issue was only 75 cents per share, or on the 108 shares belonging to the trust estate, $81. The right of the remainder-men to have this loss made up out of the proceeds of the sale of the privileges is admitted; but the balance ($533.25 — $81.00), $452.25, is clear profit in the

[Biddle's Appeal.]

hands of the trustee, and under Wiltbank's Appeal and Moss's Appeal must be awarded to the life-tenant as income.

The argument of possible inconvenience in determining whether there may be profit or loss, should have no force to induce this court to destroy the principles adopted in Wiltbank's Appeal. In the present case, the amount of profits was judicially found. The questions of profit or loss in similar cases in New Hampshire, New Jersey, and New York, were referred to masters: Lord *v.* Brooks, 52 N. H. 76; Van Doren *v.* Olden, 4 C. E. Green 176; Clarkson *v.* Clarkson, 18 Barb. 646; Simpson *v.* Moore, 30 Barb. 637.

*J. B. Townsend,* for the appellees.—Wiltbank's Appeal, 14 P. F. Smith, 256, is the only case which can be claimed to lend any show of support to appellant's position here. But the more recent exposition of the law on this subject will be found in Moss's Appeal, 2 Norris, 264, which, if it does not amount to a reversal of Wiltbank's Appeal, at least comes so near that result as to leave a very slender edge for it to stand upon.

The necessity for holding the gain from the sale of options in this case to become part of the capital would seem to be imperative, for these reasons:—(1) That it is not shown to be profits at all. (2) It is certainly not profits earned since the death of the testatrix. (3) If the result of the increase of stock has been to depress in any degree the market price or value of the old stock, then this gain on the sale of options to subscribe ought to be held the measure of the extent to which such old stock has been diminished in value by the new issue; and to restore it to capital, simply puts the old shares in the same position in which they stood (as to value) before the increase.

The decree of the court below, we submit, should be sustained for the sake of confirming a plain rule for which Moss's Appeal is sufficient foundation. The uncertainty, doubt, and confusion which would result from adopting any other rule would require involved examinations into market prices at different dates, and into values, appearing by accounts or books, or estimates of assets, which are so often unreliable as data on which to base calculations of profits. The onus rested upon the appellant to establish by proof that the fund in contest was income accruing since the death of Mrs. Condy, and the proofs submitted did not establish that fact.

Mr. Justice MERCUR delivered the opinion of the court, January 23d 1882.

This contention is between the tenant for life and the residuary legatee, under the will of Mary Condy, who died on the 29th June 1880. She gave and bequeathed all her estate

to the appellant, in trust, to collect and receive the income thereof for her own use during her life, and at her death, the testatrix gave one-half the residue to the appellee. The property bequeathed was stock of the Insurance Company of North America. At a meeting of the stockholders of the company, held on the 15th November of the same year, it was resolved to increase the capital stock from $2,000,000 to $3,000,000 by issuing 100,000 shares at $10 per share, in the proportion of one share to each two shares held by the stockholders—they to pay $10 per share for each share of the new stock and also $10 per share for the privilege of subscribing, the proceeds of which privilege to be added to the surplus fund of the company. Instead of subscribing for the new stock, the executor sold the privilege of subscribing therefor. The question is, whether the sum thus realized should be awarded to the appellant as income, or whether it belongs to the principal of the estate?

The entire value of the stock, with all its incidents, at the death of the testatrix, constituted the principal of the estate. On this principal, the appellant was entitled to the income. Whatever value beyond par, the stock then had, by reason of the large surplus fund of the company or otherwise, attached to the stock and formed a part of the principal. The appellant was not given any part of this aggregated value of the stock. The income therefrom was all she was entitled to receive. Whatever was capital, must remain capital. The executor could not take therefrom and give to the life-tenant, to the injury of the residuary legatee. The surplus of the company was large. This greatly increased the value of the stock. It is not shown that the stock was of greater value on the 15th November than on the day of the death of the testatrix, nor that the surplus fund had been increased in the mean time.

The right of a stockholder to subscribe for new stock, was a right to change the form of the investment; but that which existed as principal did not, by the exercise or sale of that right, become income. The appellant became entitled to the income on that principal in its changed from; but not to the principal itself.

The distinction between the surplus fund, existing at the time of the death of the testator, and a fund accumulated afterwards, is distinctly recognized in Earp's Appeal, 4 Casey 368. That which had accumulated before the death of the testator, was held to be part of the principal of the fund, and that which accumulated after his death, to be income. The correctness of the principle there ruled, is expressly affirmed in Wiltbank's Appeal, 14 P. F. Smith 256, although, under the facts of the case, the profit on a sale of the newly subscribed stock was held

to be income. Moss's Appeal, 2 Norris 264, is in entire harmony with the conclusion at which we have arrived. There the trust fund consisted of stock, and each of the stockholders was given the privilege of subscribing, and paying, for as many shares of the new stock, as he held of the old. The estate of the testator was entitled to subscribe for one hundred shares of the new stock. The executors, not having funds sufficient to pay the sum required for so much stock, sold the option to subscribe for sixty shares thereof, and with the money realized therefrom, subscribed, and paid, for the remaining forty shares. The life-tenant claimed these shares, thus acquired, to be income: but it was held, they formed a portion of the capital of the residuary estate. It was there said by our brother Paxson, there is no doubt about the law. The difficulty is in applying the law to the facts of the particular case. It is true, one reason given for the ruling was, that after the increase of stock, the value of each share decreased. Such must be the natural effect of an increase produced in part by putting an existing surplus fund into certificates of new stock. The additional sum paid in for each share being less than the actual value of a share of the old stock, necessarily lessens the value of the latter. In the present case, the diminution in the value of the stock and in its market price is shown to be small. That, however, we think is not the only evidence of what constitutes principal or capital. In so far as the fund, which was a part of the residuary estate, was used to acquire the new stock, the latter took the place of the former. It was not income, but capital in a changed form. The appellant is not entitled to the corpus of the new stock, but to its income.

Decree affirmed, and appeal dismissed at the costs of the appellant.

SHARSWOOD, C. J., and TRUNKEY, J., dissented.