DETERMINED IN THE

# SECOND DEPARTMENT

IN THE

## APPELLATE DIVISION,

### February, 1903.

In the Matter of the Judicial Settlement of the Account of WILLIAM E. MURPHY, as Executor, etc., of THOMAS MURPHY, Deceased, Respondent.

REBECCA O'BRIEN, as Administratrix, etc., of MARY REBECCA MURPHY, Deceased, Appellant.

*Will — a gift of " the interest of twenty thousand dollars," held not to entitle the beneficiary to legal interest thereon — effect of a receipt for " interest money in full to date."*

Where a will uses the words "income" and "interest" indifferently and as synonymous terms, a clause in the will by which the testator bequeaths "the interest of twenty thousand dollars" to his son during his natural life, does not entitle such son to receive legal interest on the sum of $20,000 during his lifetime, but only the income of the securities in which the trust fund has been invested, particularly where the latter construction was the one adopted by the testator's son and the executors in their dealings with each other.

On an accounting wherein the administratrix of the son's wife, who was the sole beneficiary under her husband's will, endeavored to surcharge the accounts of the executors because of their alleged failure from 1877 to 1886 to collect interest on part of the mortgages in which the $20,000 fund was invested, an unassailed receipt signed by the son, dated July 11th, 1888, for $150 "interest money in full to date," is conclusive against the administratrix's contention.

APPEAL by Rebecca O'Brien, as administratrix, etc., of Mary Rebecca Murphy, deceased, from a decree of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 19th day of March, 1901, overruling exceptions and settling the executor's account.

*Robert H. Roy*, for the appellant.

*William N. Dykman*, for the respondent.

GOODRICH, P. J. :

Thomas Murphy died in 1867, leaving a will which was admitted to probate by the surrogate of Kings county. Letters testamentary were issued on December 7, 1867, to Eliza Murphy, his widow, and William E. Murphy, one of his sons. Eliza died in June, 1891, leaving William the sole executor. The will contained the following provision : " I give and bequeath the interest of twenty thousand dollars to my son Frederick, for and during his natural life, and upon his death I give the same to such children as he may leave, and the issue of such as may have died leaving issue, such issue to take the share his, her or their parent would have received if living, and in default of leaving such children or issue I give the same to my said son Thomas and my daughters Eliza and Augusta in equal shares."

Frederick died on April 9, 1897, leaving a will giving all his property to his widow, Mary R. Murphy, and appointing her sole executrix. In December, 1898, she presented to the surrogate a petition praying for an accounting by the surviving executor of Thomas Murphy. She died during this litigation and Mrs. O'Brien, her administratrix, has been substituted in her place. In January, 1899, the executor of Thomas filed his answer, with schedules of accounts annexed, in which he alleged that he had paid to Frederick or his executrix all the income which he had received from an investment of $20,000 made for the benefit of Frederick in pursuance of the provisions of the will. The surrogate ordered a reference for the examination of the accounts and determination thereon. After this order was entered the executor filed a supplemental account differing somewhat from his original account. The only witness produced before the referee was the surviving executor, who was examined with great minuteness as to the details of the account and of his proceedings. In his report the referee determined " That all of the interest on said Twenty thousand dollar ($20,000) trust fund which said beneficiary, Frederick G. Murphy, was entitled to receive in his lifetime was paid to him by said trustees in his life-

time or has since been paid to the executrix of his last will and testament." The surrogate confirmed the report in the identical language above quoted.

The claim of the petitioner was that her husband was entitled to be paid out of the estate legal interest on the sum of $20,000 during his lifetime. The executor contended that Frederick was entitled to receive only such income as had been derived from an investment of $20,000 in certain mortgages ; that such investment and certain foreclosures and reinvestments were made with the approval of Frederick ; that he had paid Frederick all the income which he had received therefrom ; that any loss of interest which has resulted was not chargeable to him, but must be borne by Frederick.

The primary question is as to the intent of the testator in the use in the quoted clause of the words " interest of Twenty thousand dollars." While the entire will does not appear in the record a copy of it is submitted to us under stipulation of the parties. The testator left seven children, five sons, William, Thomas, Frederick, Daniel and Vincent, and two daughters, Eliza and Augusta. He devised to William a farm at Flatbush during his natural life, with remainder to Thomas, Frederick, Eliza and Augusta and their heirs. He devised a house and lot each to Eliza, Augusta and Thomas, another house to Patrick O'Brien in trust to receive " the rents and profits and pay the same " to Daniel during his life, with remainder to his issue, or on the failure of issue " the said house and land to be sold and the proceeds thereof to be added to my personal estate and disposed of as hereinafter directed." The 7th clause reads thus :

" *Seventh.* I order and direct the residue of my real estate to be sold by my executors as soon as they may deem expedient after my death, and the proceeds to be added to my personal estate and disposed of as hereinafter directed, and until such sale I give and devise the rents, issues and profits thereof to my wife Eliza."

The 8th clause has already been quoted. The 9th clause bequeathed the sum of $5,000 in trust to his executors, " to invest the same and apply the income thereof to the support " of Vincent during his life.

The 11th clause bequeathed " the interest of thirty thousand dollars to be paid " to his wife during her life " in lieu of dower," " and

direct the said sum to be invested and kept invested at interest for her benefit."

The 12th clause gives the residue of his personal estate, including the proceeds of the real estate, to his wife "in trust, to invest the same at interest and pay the income thereof during her life" to Thomas, Frederick, Eliza and Augusta, "and any portion of the principal in her discretion." The will appoints the widow and the son William executors.

It is manifest that the draughtsman of the will has used the words income and interest indifferently and as synonymous terms. Thus, in the 9th clause, he directs the executors to invest a given sum and apply the income to the support of one of his children. In the 11th clause he bequeaths the interest of a given sum to his wife and directs the executors to invest the principal at interest for her benefit. In the 12th clause he directs them to invest a certain sum at interest and to pay the income to his children.

No authorities have been cited on the briefs of counsel as to the use of the words income and interest, but I find in the case of *People* v. *Supervisors of Niagara* (4 Hill, 20) a discussion as to the use of the word income as distinguished from profits of a corporation, in which the court said (pp. 23, 24): "It is undoubtedly true that ' profits ' and ' income ' are sometimes used as synonymous terms, but, strictly speaking, ' income ' means that which comes in or is received from any business or investment of capital without reference to the outgoing expenditures; while ' profits ' generally mean the gain which is made upon any business or investment when both receipts and payments are taken into the account. ' Income,' when applied to the affairs of individuals, expresses the same idea that *revenue* does when applied to the affairs of a state or nation, and no one would think of denying that our government has any revenue because the expenditures for a given period may exceed the amount of receipts."

In *Sims' Appeal* (44 Penn. St. 345) it was said: "The word ' income ' means ' the gain which proceeds from property, labour or business.' (Bouvier's Law Dict.) When applied to a sum of money, or money in the public debt, it is equivalent to ' interest.' " Sometimes interest and income are used together without any discrimina-

tion between them, as in *Biddle's Appeal* (99 Penn. St. 278).
Income and dividends have been held to be synonymous or convertible terms. (*Mills* v. *Britton*, 64 Conn. 23; *Spooner* v. *Phillips*, 62 id. 62; *Lord* v. *Brooks*, 52 N. H. 78.)

Taking all the provisions of the will together, I am convinced
that no difference was intended by the testator in the use of the
words income and interest. However this may be, there is another
answer to the contention of the appellant. Her claim is that the
executors failed to collect interest on a part of the mortgages from
1877 to 1886. In the account with Frederick presented by the
executor there appears an item " July 11, 1888. On account interest money in full to date." The voucher was produced on the trial,
but is not printed in the record. Its contents, however, are shown
by the following : " Q. Mr. Murphy, you have produced a voucher
here dated July 11, 1888, for $150, ' Interest money in full to date.
(Signed) Frederick G. Murphy.' Did you pay Mr. Murphy that
$150 ?  A. Well, I cannot exactly say whether I did or not. I cannot say whether I took that receipt, or whether my mother did. Yes,
sir, I remember about the transaction. At that time there had been
paid to Frederick G. Murphy all the interest that we received at
either 6 per cent or 7 per cent that was payable on the sum of $20,000.
Q. But there has not been received by you or your mother any
interest for seven years on the sum of $13,400 ?  A. Yes, sir.  Q.
So that the receipt of July 11, 1888, was no more than a receipt of
interest on $20,000 for a part of the time, and about $1,000 for the
balance of the time which preceded the date of the suit ?  [Mr.
Britton objects on the ground that the receipt speaks for itself, and
says ' for interest to date.'  Objection sustained.  Exception.]  Q.
Up to July 11, 1888, when this receipt was signed by Frederick G.
Murphy, you and your co-executor had not received interest on the
$20,000 for the whole period from 'the time of the original investment up to the date of the receipt ?  A. No, sir.  *  *  *  Q.
Isn't it true, Mr. Murphy, that having a receipt from Frederick G.
Murphy in full to July 11, 1888, that all interest received by you
as executor up to that time had been paid over to Frederick G.
Murphy ?  A. It was. Yes, sir, and I charged myself with all the
interest that could have been received by me, and all that could have
been received by Frederick G. Murphy."

This evidence justified the finding of the referee that all of the interest on said $20,000 trust fund which Frederick was entitled to receive in his lifetime had been paid to him.

In addition to this, the dealings between Frederick and the executors have given a practical construction to the will. It appears that Frederick approved and sanctioned the investment by the executors of $20,000 in mortgages, their subsequent dealings with the mortgages and their delay in the foreclosures at the time the mortgagors failed to pay interest, and that with full knowledge of the facts he received at least the actual income and certain proceeds of the mortgages. It would be inequitable at this late day and under the evidence produced to permit his representatives to destroy the effect of the receipt. The referee properly ruled that the contestant was at liberty to contradict the terms of the receipt, but no attempt was made to do so, and the receipt remains unassailed and is conclusive upon the contestant.

For these reasons the decree of the surrogate should be affirmed.

BARTLETT, WOODWARD and HIRSCHBERG, JJ., concurred.

Decree of the Surrogate's Court of Kings county affirmed, with costs.