# Stokes' Estate (No. 1).

*Wills—Distribution—Stock—Dividends—Life tenants and remaindermen.*

1. When the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits, which have accumulated in the life time of the testator, which are not divided until after his death, belong to the corpus of his estate, whilst the dividends of earnings made after his death are income, and are payable to the life tenant, no matter whether the dividend be in cash, or scrip, or stock.

2. At the time of his death on November 12, 1910, testator owned 171 shares of the stock of a railroad company. Under his will, he gave to his executors as trustees substantially all of his estate in trust for the payment of a fixed sum annually to his widow and the residue of the income to his child for their lives. The railroad stock in question was a part of the principal of the trust estate, and it appeared that a dividend of five dollars per share was declared on January 11, 1912, out of the accumulated surplus, the amount coming to these executors being $855, which was paid in cash. The executors were entitled, as were the other stockholders of the railroad company, to use the proceeds of the dividend in the purchase of stock in an affiliated company. The executors exercised their right in this respect by purchasing seventeen and one-tenth shares of the stock. The question then arose whether these shares, representing the fund of $855, but having a market value in excess of $1,500, were to be regarded as part of the principal of the trust estate, or as income payable to the life tenants, or were to be apportioned, partly to the life tenants and partly to the remaindermen. It appeared from the record that at the date of testator's death the railroad company had a capital stock of $60,608,000, and an accumulated surplus of $27,219,779; and that subsequently to his death and at the date of the dividend, there had been added to the surplus from earnings the sum of

$3,110,868. The dividend declared was the equivalent of ten per cent. of the capital stock and amounted to $6,060,800. Approximately the surplus existing at the time when the dividend was declared had accumulated in the following proportions: Before the death of the testator .8975 thereof, and after the death of the testator .1025. The amount of the surplus earned after the death of the testator, $3,110,868, bore to the amount of the dividend, $6,060,800, the decimal proportion of .5132, or a little more than one-half. The court below held that the dividend was to be apportioned between the life tenants and remaindermen in the proportions which the amount of the surplus earned after the death of the testator bore to the whole amount of the surplus, and therefore awarded .8975 of it, or $767.50 (par value) to the principal of the trust fund; and .1025, or $87.50 to the life tenants. *Held,* error, that the dividend should be apportioned .5132 of it or $438 to the life tenants and .4868 of it, or $417 to the principal of the trust fund, thus giving to the life tenants all of the income earned after the death of the testator and reserving to the corpus of the estate the amount of the surplus which had accrued at the death of the testator.

3. The essential thing in such a case is to find the value of the estate at the time of testator's death, and as against the result of the payment of extraordinary dividends, preserve this value from diminution. It is the actual value of the shares, or their intrinsic value, that is to be ascertained from the best methods at command as of the date of the death of the testator.

Argued January 15, 1913. Appeal, No. 262, Jan. T., 1912, by Anna S. Truitt, from decree of O. C. Philadelphia Co., Jan. T., 1912, No. 184, dismissing exceptions to adjudication in Estate of Samuel E. Stokes, deceased. Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Modified.

Exceptions to adjudication.

The opinion of the Supreme Court states the case.

The auditing judge, Anderson, J., awarded certain assets of the estate, consisting of a dividend on stock of the Lehigh Valley Railroad Company, amounting to $855.00 in the proportions of $87.50 to the life tenants under a trust created by the testator and the remainder to the principal fund. One of the life tenants, Anna S.

Truitt, filed exceptions to this adjudication, which exceptions were dismissed in an opinion by LAMORELLE, J.

*Errors assigned* were in dismissing exceptions to adjudication.

*Charles C. Norris, Jr.,* for appellant.

*John G. Johnson,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 15, 1913:

The question in this case arises upon the adjudication of the account of the executors of the will of Samuel E. Stokes, deceased, who died November 12, 1910. At the time of his death the testator owned 171 shares of the stock of the Lehigh Valley Railroad Company. Under his will he gave to his executors as trustees substantially all his estate in trust for the payment of a fixed sum annually to his widow, and the residue of the income to his children for their lives. The railroad stock in question was a part of the principal of the trust estate, and it appeared that a dividend of five dollars per share was declared on January 11, 1912, out of the accumulated surplus, the amount coming to these executors being $855, which was paid in cash. The executors were entitled, as were the other stockholders of the railroad company, to use the proceeds of the dividend in the purchase of stock in the Lehigh Valley Coal Sales Company. The executors exercised their right in this respect by purchasing seventeen and one-tenth shares of the Coal Sales Company stock. The question then arose whether these shares, representing the fund of $855, but having a market value in excess of $1,500, were to be regarded as part of the principal of the trust estate, or as income payable to the life tenants, or were to be apportioned, partly to the life tenants and partly to the remaindermen. It appears from the record that at the date of testator's death the railroad company had a

capital stock of $60,608,000, and an accumulated surplus of $27,219,779; and that subsequently to his death and at the date of the dividend, there had been added to the surplus from earnings the sum of $3,110,868. The dividend declared was the equivalent of ten per cent. of the capital stock, and amounted to $6,060,800. Approximately the surplus existing at the time when the dividend was declared had accumulated in the following proportions: Before the death of the testator .8975 thereof, and after the death of the testator .1025. The amount of the surplus earned after the death of the testator, $3,110,868, bore to the amount of the dividend, $6,060,800, the decimal proportion of .5132, or a little more than one-half, leaving .4868 of the dividend as earned prior to testator's death. The auditing judge as well as the Orphans' Court held that the dividend was to be apportioned between the life tenants and remaindermen in the proportions which the amount of the surplus earned after the death of the testator bore to the whole amount of the surplus, and therefore awarded .8975 of it, or $767.50 (par value) to the principal of the trust fund; and .1025, or $87.50, to the life tenants. One of the latter, Anna S. Truitt, alleging that this method of apportionment is wrong, has appealed.

That the dividend should be apportioned is not questioned; it is the method adopted that is criticised. As the auditing judge said, "The difficulty in the present case lies not in the rule itself, but in its application." In Smith's Estate, 140 Pa. 344, this court said, speaking by Mr. Justice CLARK (p. 352): "It is well settled in this State that, when the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits, which have accumulated in the lifetime of the testator, but which are not divided until after his death, belong to the corpus of his estate; whilst the dividends of earnings made after his death are income, and are payable to the life tenant, no matter

whether the dividend be in cash, or scrip, or stock." This was the substance of the rule laid down in Earp's Appeal, 28 Pa. 368. And in the same opinion, after presenting an analysis of the decision in Earp's Appeal, and comparing it with the decisions in Moss's App., 83 Pa. 264; Biddle's App., 99 Pa. 278; McKeen's App., 42 Pa. 479; Vinton's App., 99 Pa. 434; Oliver's Est., 136 Pa. 43; Wiltbank's App., 64 Pa. 256, Mr. Justice CLARK said (p. 355) that this rule has "for more than the third of a century, been steadily maintained, without modification or change; in no subsequent case, we believe, has its authority been doubted, its practicability questioned, or the soundness of its doctrine impeached. It has not only been adhered to in this State, but it has been adopted and followed in nearly all of the states. It is referred to in the text books as the Pennsylvania rule; but, as remarked by Mr. Cook in his very recent treatise on Stocks and Stockholders, etc., Section 554, 'inasmuch as it obtains in every state of the Union, excepting Georgia and Massachusetts, it might well be called the American rule.' " Our rule has been criticised as being in some instances difficult to apply, and as requiring trustees to go beyond the action of the directors in declaring dividends, and as making it necessary to inquire somewhat into the concerns of corporations, in estimating the value of the shares, and in ascertaining the earnings, or increase in value after the death of the testator. But, to quote further from the opinion just cited (p. 356) : "It must be conceded, we think, that whilst the Pennsylvania rule may in some cases, perhaps, be more difficult in its application, when properly applied it arrives at results which are absolutely just, and secures to the life tenant, and to those entitled in remainder, precisely what they of right are entitled to have, and this cannot be said of the practical operation of any other rule."

An arbitrary, but simple, rule prevails in Massachusetts. The courts of that state regard cash dividends,

however large, as income, and stock dividends, however made, as additions to capital, and therefore as part of the corpus. If such a rule is desired in Pennsylvania, we think the change should be made by the legislature rather than by the courts. The rule of apportionment is too firmly fixed with us to justify its alteration or abrogation by the judicial tribunals. From the date of the decision from which we have last quoted, down to the present we know of no case in Pennsylvania tending to disturb the doctrine of Earp's Appeal, as properly understood. One of our latest cases relating to the respective rights of tenants for life and remaindermen to extraordinary dividends, is Boyer's App., 224 Pa. 144. There is an intimation in the argument here that the decision in Boyer's Appeal may have been intended to work some change in the rule as laid down in Earp's Appeal. There certainly was no such intention. The decision in Boyer's Appeal was intended to follow accurately the principle declared in Earp's Appeal. Any idea that it does not do so is, we think, founded upon a misapprehension of one or other of the decisions. In Boyer's Appeal the auditor undertook to apply the rule of Earp's Appeal, and that it should have been applied was not questioned in the opinion of this court in that case. But we held that the auditor had adopted an erroneous method of arriving at the value of the principal of the trust estate at the respective dates of the creation of the trust and the issuing of the dividend obligations and certificates of indebtedness. The auditor fixed these respective values by comparing the amount standing upon the books to the credit of profit and loss at the two dates, without ascertaining and comparing the real value of the stock at the respective times. This method was held to be incorrect. We said (p. 152): "The auditor apparently took no account of either actual value or market value of the stocks in question at any time, and therefore he missed the real point of the inquiry." It did not appear from

the evidence that the payment of the dividend in ques-
tion exhausted the earnings made subsequent to the for-
mation of the trust, or that it reduced in any way the
value of the trust estate below what it was at the time
of the creation of the trust.   We held that as every divi-
dend goes presumbly to the life tenant, the burden was
on the remaindermen to show any impairment of prin-
cipal.   This was not shown, and consequently, as we
said, "the whole of the bonus or dividend would, under
the operation of the Pennsylvania rule (i. e., the rule
laid down in Earp's Appeal) go to the life tenant." It
is apparent, we think, that the effort was to apply the
doctrine of Earp's Appeal to the facts of the case then
under consideration.   No diminution in the value of the
trust estate, at the expense of the remaindermen, ap-
peared which could be attributed to the payment of the
dividend.   It was therefore adjudged that the principal
or corpus of the estate was unimpaired, and the income
or dividend declared from that which it appeared had
accrued since the creation of the trust was distributed
to the life tenants.   This was essentially in accord with
the principle of Earp's Appeal.   It may not be amiss to
recall briefly the facts of that case.

Robert Earp died November 17, 1848.   He then had
580 shares of stock in a manufacturing corporation,
which were worth at that time, including the accumu-
lated surplus, $125 per share.   This value was ascer-
tained by an actual sale of 40 shares at that price, leav-
ing the estate possessed of 540 shares.   The surplus fund
continued to increase for six years until 1854, when, in-
stead of dividing the surplus in money among the stock-
holders, they were given a dividend of 150 per cent. of
their holdings in new certificates of stock.   The Earp
estate received 810 shares of new stock, making a total
holding of 1,350 shares.   At the date of Earp's death,
the 540 shares of stock which he owned were worth, at
$125 per share, the sum of $67,500.   When the stock
dividend was declared, the market price of the shares

fell to $80 per share. The 1,350 shares at $80 per share were worth $108,000. The difference in value, $40,500, was held to be the amount of profit arising or accruing upon the stock after the death of testator, and as such was all awarded to the life tenants. It will be noticed that the stock dividend of 810 shares at the par value of $50 per share, amounted to $40,500, so that the stock dividend distributed precisely the amount of the increase in value which occurred after the death of the testator. The value of the estate at the time of testator's death was fixed by the market value, or the price which the stock would have brought if it had all been sold and converted into money. This amount was said by the court to be the principal of the estate. All above that amount was held to be income within the meaning of the will. Mr. Chief Justice Lewis said (p. 374): "It is equally clear that the profits arising since the death of the testator are 'income' within the meaning of the will, and should be distributed among the appellants. These profits amounted, at the time of the issue of new certificates of stock, to the sum of $40,500, exclusive of the current semi-annual dividends which had been previously declared and paid. That sum is the rightful property of the appellants." The remainder, which was $67,500, was the value of the estate at the time of the testator's death, and was held to be principal. This, the court said (p. 374) "must remain unimpaired during the lives of the appellants, and the 'income' arising since the death of the testator is to be distributed among them (the life tenants)."

It will be noticed that the essential thing under Earp's Appeal is to find the value of the estate at the time of testator's death, and as against the result of the payment of extraordinary dividends, preserve it from diminution. In Earp's Appeal, the value taken seems to have been the market value of the shares, but that is not to be regarded as the exclusive test; for, in Moss's App., 83 Pa. 264, in speaking of market values of stock as

affecting the determination of the question, it was said (p. 270) : "The fallacy of this theory consists in the fact of estimating the 140 shares, not at their actual value at the time of the transaction, but at their market value, three years afterwards. A more uncertain rule could not well be imagined. It would make the rights of the parties depend upon the condition of the stock market, which is as variable as the tides, without their regularity, market values are well enough upon a question of distribution, where the parties are about to realize; but upon a question of values between life tenants and remaindermen, a judicial decree should go down through the shifting sands of the stock market until it reaches the solid rock of actual values. The application of any other rule might work serious injustice. It is well known that within the last year the stock of more than one large corporation was varied in price over one hundred per cent." And in Biddle's App., 99 Pa. 278, Mr. Justice MERCUR, said (p. 282) : "The entire value of the stock, with all its incidents, at the death of the testatrix, constituted the principal of the estate. On this principal, the appellant was entitled to the income. Whatever value beyond par, the stock then had, by reason of the large surplus fund of the company or otherwise, attached to the stock and formed a part of the principal." And in Smith's Est., 140 Pa. 344, Mr. Justice CLARK said: "But the question of value (of shares of stock) is to be determined, not by the fluctuations of the stock market, but by the actual assets held by the corporation: Moss's Appeal, supra; Biddle's Appeal, supra. It is the intrinsic value of the shares, to be ascertained from the amount and value of the assets at the death of the testator, and at the time of the increase of the stock, which governs in the apportionment of the surplus profits. The market value may aid in the ascertainment of the actual value, and is therefore properly received in evidence on that issue." It is the actual value of the shares, or their intrinsic value that is to

.be ascertained from the best methods at command as of the date of the death of the testator. Turning to the present case, we may say, in the language of Mr. Justice MERCUR, in Biddle's Appeal, supra, "Whatever value beyond par, the stock then had (at testator's death), by reason of the large surplus fund of the company or otherwise, attached to the stock and formed a part of the principal." Here, at the date of testator's death, the capital of the railroad company was $60,608,-000, with a surplus of $27,219,779. When the dividend was declared, as nearly as could be ascertained, the surplus had increased to $30,330,647, showing an addition presumably of earnings, after the death of the testator, of $3,110,868. Speaking in round numbers, for greater convenience, at the date of the declaration of the dividend, the total surplus fund of the railroad company was $30,000,000, of which, in round numbers, $27,000,-000 had accumulated prior to the testator's death, and $3,000,000 accrued subsequently. The sum distributed in the dividend was, speaking again in round numbers, $6,000,000. If this amount be deducted from the total surplus, it leaves a balance of $24,000,000, which is $3,000,000 less than the amount of the surplus which formed part of the principal or corpus of the estate, at the date of the testator's death. In order therefore to keep within the rule of Earp's Appeal, and preserve the principal of the estate unimpaired, $3,000,000 of the dividend must be apportioned to the principal, thus restoring the amount of the surplus to $27,000,000, the amount at which it stood at the death of the testator. The balance of $3,000,000 is income accumulated since the testator's death, and under the doctrine of Earp's Appeal, goes to the life tenants. This calculation is, of course, based on the entire amount of the capital stock, and the accumulations of the railroad company, but the proportionate result will be the same if it be limited to the 171 shares of stock here in question. The dividend was $5.00 per share or $855 in all. The surplus in-

creased after the death of the testator, approximately, $2.57 per share. When a dividend of $5.00 per share was declared it therefore absorbed all of the increase in the surplus earned after the testator's death, and infringed upon the surplus previously earned, which, at the death of testator, formed a part of the principal of his estate, to the extent of $2.43 per share besides. Obviously, therefore, if the principal of the estate, as it existed at the death of testator, is to be maintained intact, the dividend of $5.00 per share must be apportioned, by awarding about $2.57 to the life tenants, and $2.43 to the remaindermen; the accurate decimal proportion, as shown by the statement submitted at the argument, being .5132, as representing the proportion to be applied to income, and .4868, as representing the proportion to be retained for the principal. The court below, however, apportioned the dividend on the basis of the ratio which the amount added to the surplus after the death of the testator bore to the entire surplus at the time the dividend was declared. This proportion was about as one to ten, or more accurately was .1025 to income, and .8975 to principal. This method of distribution divided the dividend of $5.00 per share by giving to the life tenants about 50 cents per share, and to the remaindermen about $4.50 per share. Or, applying the same method to the entire surplus fund, for the purpose of illustration, the effect would be to give to the life tenants about one-tenth of the dividend, or $600,000, and to the remaindermen the balance of the dividend, or $5,400,000. This would take from the life tenants about $2,400,000 of surplus earned after the death of the testator, and add it to the principal sum. Obviously such a result cannot be correct. The life tenants are entitled to all the increased earnings accumulated after the death of the testator, which were distributed in the dividend which was declared, and there is no warrant for depriving them of any part of this amount. The correct method of apportionment calculated with approxi-

mate exactness, gives to income .5132 of $855, or $438; and to principal .4868 of $855, or $417. .

The first and fourth assignments of error are sustained, and the record is remitted to the court below that the decree may be modified in accordance with the views expressed in this opinion.