# Willcox's Estate.

*Trusts and trustees—Principal and income—Stock dividend—Decrease of book value of stock—Reimbursement of principal.*

When the stock of a corporation is by the will of a decedent held in trust by a trustee to pay the income to one person for life, and the principal over to a remainderman, and the corporation at the date of the death of the decedent has a large surplus, so .that the book value of the shares is above par, and four years after the death of the life tenant, and after a large addition had been added to the surplus during the life tenancy, the company declares an extraordinary stock dividend equalling practically the amount of the surplus earned since the death of the testator, and at the same time increases its capital stock, selling a large number of the new shares at less than the previous book value of the shares, with the result that all of the shares of the company after the transaction is completed, have a less book value than at the date of the death of the decedent, the stock dividend awarded to the trust estate is not to be distributed wholly to income, but enough of the stock must be set aside to reimburse the principal for the loss it suffered by reason of the stock dividend in connection with the stock increase, but not for any loss due to the sale of new stock at less than the value of the old stock.

Argued Oct. 16, 1916. Appeal, No. 135, Oct. T., 1916, by West End Trust Co., Ancillary, Administrator c. t. a. of Estate of William Harvey Willcox, deceased, Distributee, from decree of O. C. Philadelphia Co., Oct. T., 1902, No. 186, dismissing exceptions to adjudication in Estate of Frederick Willcox, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Decree modified.

Exceptions to adjudication.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to adjudication.

*James.W. Laws,* with him *J. Morris Dalton,* for appellant.—The whole of an extraordinary stock dividend, declared out of surplus accumulated since testator's death, belongs to the life tenant: Weimer on Pennsylvania Corporation Law, p. 342; Eisner's Est., 175 Pa. 143; Boyer's App., 224 Pa. 144; Stokes' Est., 240 Pa. 277; Earp's App., 28 Pa. 368; Smith's Est., 140 Pa. 344; Thomson's Est., 153 Pa. 332; Oliver's Est., 136 Pa. 43; Connolly's Est., 198 Pa. 137; Graham's Est., 198 Pa. 216.

*Thomas Stokes,* with him *G. W. Pepper,* for appellee. —The value of the principal investment as it existed at the time of the testator's death should not be impaired, but should be preserved for the remaindermen: Earp's App., 28 Pa. 368; Moss's App., 83 Pa. 264; Biddle's App., 99 Pa. 278; Smith's Est., 140 Pa. 344; Boyer's App., 224 Pa. 144; Stokes' Est., 240 Pa. 277.

OPINION BY PORTER, J., March 16, 1917:

This case presents the question of the proper distribution, as between principal and income of a trust fund, of an extraordinary stock dividend, upon stock in a corporation which formed part of the trust fund. Frederick Willcox died on July 2, 1901, leaving a will which bequeathed the residue of his estate to the Philadelphia Trust Company, in trust to pay the income of the fund to his children during their respective lives, one-fifth of the income being payable to his son, William Harvey Willcox, during his life, and the will made provision for the disposition of the remainder after the death of the children. William Harvey Willcox died on May 25, 1910, and it is upon all hands conceded, that under the provisions of the will, his estate had no interest in the income which thereafter accrued. A part of the trust fund consisted of 416 shares of stock of the Union Rolling Mills Company, a corporation, which passed to the trustee and continue to be held in the trust estate. When the

testator died the capital of the Union Rolling Mills Company consisted of 5,000 shares of the par value of $50 each, amounting to $250,000, and the surplus of the company was $126,254.14. The surplus added to the capital made a total of $376,254.14. The value of each share of stock, at the time of testator's death, was $75.25. The capital and surplus of the corporation remained unimpaired and the value of the principal of the trust fund in question, so far as it was represented by these 416 shares of stock, remained unchanged until the date of the death of William Harvey Willcox, and subsequently until the declaration of the dividend with which we here have to deal. The value of the 416 shares of stock was $31,304, and never fell below that sum until the dividend was declared. During the period between the death of the testator and that of William Harvey Willcox, who was entitled to one-fifth of the income during that period, the surplus fund of the corporation was increased, by profits which were not divided, by the amount of $149,-772.43, and it is conceded that the dividend involved a distribution of that part of the surplus, together with an additional sum, and that as the income was earned during the lifetime of William Harvey Willcox, his estate is entitled to one-fifth of whatever part of the dividend should be awarded to the income of the trust estate. This principle being conceded by the learned counsel for both appellant and appellee, we have not deemed it necessary to consider or discuss its soundness. Counsel for appellant and for appellee are in accord upon the facts and figures thus far stated.

The capital stock of the Union Rolling Mills Company was, in September, 1914, four years after the death of William Harvey Willcox, increased from $250,000, divided into 5,000 shares, to $600,000, divided into 12,000 shares of the par value of $50 each. This involved an issue of 7,000 new shares, and, in pursuance of appropriate action by the stockholders, those shares were disposed of in the following manner: 400 shares of stock were sold

to employees of the corporation at par, $50 per share; 3,600 shares were first offered to stockholders of the corporation, in proportion to their holdings, at the price of $62.50 per share, and the balance of the 3,600 shares not taken by stockholders were sold to outside parties at $62.50 per share. The remaining 3,000 shares were issued to stockholders of record on September 5, 1914, in proportion to their holdings, as a stock dividend, at par, $50 per share, "and $150,000 in amount of the accumulated surplus profits of the company" was appropriated and applied in payment of this stock dividend. This transferred $150,000 from the surplus of the corporation to its capital stock account. The practical results to the corporation were that it issued 7,000 shares of new stock; for 3,000 of which, issued to the stockholders, it received nothing; for 400 shares it received par, these shares contributed nothing to the surplus fund; and the remaining shares were sold at a premium above their par value which netted to the corporation, in the aggregate, $45,-137.50. The amount of the original surplus which remained, after deducting the $150,000 transferred to capital account by the stock dividend, was $126,026.57, add to this the $45,137.50 and we have $171,164.07, as the total surplus of the corporation, after the increase in the capital stock had been completed. While the surplus thus seems to be larger than it was at the time of the testator's death, it is to be remembered that the surplus is now to be distributed among 12,000 shares, instead of 5,000 shares. Counsel for appellant and appellee agree that the book value of the stock immediately after the stock was increased was only $64.26. The only evidence as to the value of this stock was as to the book value and that was arrived at by an appraisement of the assets of the company, deducting from the aggregate thereof the liabilities of the corporation; we have no suggestion from either side that this book value did not represent the actual value of the stock, the liquidating value. The corporation seems to have been one of those private under-

takings, the stocks of which are not usually bought and sold in the stock markets, that it was a very profitable undertaking clearly appears from the evidence. The increase of stock and the allotment of stock to the employees at par seem to have been in all respects regular and in accordance with the laws of the State of Connecticut under which the corporation was chartered. It thus appears that the same action of the corporation which brought this dividend of 249 shares of stock in the corporation and $30 in cash into this trust fund, also had the effect of reducing the value of the original 416 shares from $75.25 per share to $64.26. The value of the original 416 shares, the principal of the fund, was reduced from $31,304, which sum had been its true value at the time of testator's death and down until the time of the declaration of the dividend, to $26,732.16, and impairment in value to the amount of $4,571.84. The greater part of this depreciation had been caused by the stock dividend to stockholders, of 3,000 shares, for which nothing went into the treasury of the company, but the sale of 400 shares at par to employees and of 3,600 shares at $62.50 per share, to stockholders and others, contributed in a slight measure to produce the total shrinkage in the value of the principal of the trust fund.

The appellant contended in the court below and has consistently maintained that position here that, as the sale of 400 shares at par to employees of the corporation and the sale of 3,600 shares at $62.50 per share contributed to the depreciation in the value of the principal of the trust fund, no part of this dividend can be applied to restore any part of the lost principal. The appellant's position is that the dividend to stockholders amounted to only $150,000, that there had been added to the surplus during the time appellant's decedent was entitled to the income, $149,772.43, or only $227.57 less than the total amount of the dividend, and that, therefore, the surplus fund of the corporation which had existed at the time of the creation of the trust, the death of the testator,

had only been impaired in the amount of the sum last mentioned. The calculation submitted by the appellant to the court below was made on this theory, and disclosed this result. The total excess of the dividend over the amount of the profits of the corporation in the distribution of which this appellant was entitled to participate being only $227.57, the part of that amount which the 416 shares of this trust fund would be entitled to receive is only thirty-eight one-hundredths of one share; or, the shares being taken as worth par, only $19. The distribution of this dividend, the appellant asserts, should be as follows: to principal $19 and to income 249 shares of stock and $11 in cash. The appellant did not, in the court below, suggest that there was any middle ground upon which it could be held that the principal of the fund was entitled to be reimbursed for the depreciation in the value of the shares resulting exclusively from the issue of the stock dividend of 3,000 shares at par, and not allowing for any depreciation resulting from the conditions upon which the other 4,000 shares were sold. It claimed everything and conceded nothing.

The contention of the appellee, on the other hand, was that the principal of the trust fund was entitled to be reimbursed, out of this dividend, for the entire impairment of the book or liquidating value of the 416 shares of stock, resulting from the entire new issue, of 3,000 shares to the stockholders, as a dividend, and, also, the 400 shares sold at par to employees and the 3,600 shares sold at $62.50 to stockholders and others. The court below sustained this contention and decreed that 71 shares of the stock, valued at $64.26, and $6.28 in cash be awarded to the accountant, as principal, for the purposes of the trust, and that 178 shares of the stock and $23.82 in cash be distributed as income. The administrator of the estate of William Harvey Willcox appeals from that decree. We have deemed it necessary to thus fully state the facts and figures, for the reason that the

case presents not only questions of law but of book-keeping.

The purpose of the action of the Union Rolling Mills Company, in the transactions of which this stock dividend was an incident, was to procure new capital in order to extend its business, with a view to future profits. This was a matter beyond the control of both the appellant and appellee. The trustee had, of course, the right to vote upon the shares which he held, but the way in which he voted is immaterial in the determination of the rights of the life tenant and those entitled to the remainder, so far as this dividend is concerned. That was a matter of corporate policy and management, of which every holder of stock has to take the chances. When stock in a corporation is part of a trust fund, the hazard of the risk is borne by both legatee for life and in remainder, for if there be a diminution in the corpus by reason of unfortunate investments, the income as well as the corpus is thereby depleted and the loss falls on both, the former receiving less income and the latter less corpus. If the management of the corporation is wise and successful those entitled to the income of the trust estate receive the dividend. The increase of the dividends may cause an actual increase in the value of the stock, even though no undivided profits be added to the surplus, and such an increase in value belongs to the principal of the trust estate, and must go to those who take in remainder: Connolly's Est., 198 Pa. 137; Graham's Est., 198 Pa. 216. When a trust fund is created it may hold a stock which is intrinsically worth $100 per share and which is earning and paying dividends of ten per cent. on its par value, but the loss of an expert manager or the discovery of some new process by a competitor may cause the earnings to decline so that only four per cent. is earned and paid as dividends. In such a case not only the market price but the intrinsic value of the stock would decline, it might be worth only $50 a share, but the dividends declared must still go to the life tenant

and cannot be appropriated to compensate for the decline of the principal. These principles are to be applied in considering the effect of the action of the Union Rolling Mills Company when it increased its capital stock, in so far as that action did not involve the declaration of the stock dividend. The purpose of issuing the stock dividend was to place the old stockholders on a more equitable footing, so far as the value of their shares was concerned, as compared to the new stock which it was desired to issue without demanding an extravagant premium. The transfer of $150,000 from the surplus to the capital stock account of the corporation was the means by which that purpose was carried out. The 400 shares sold to employees at par, as authorized by law, were so disposed of for the purpose of interesting those employees, promoting friendly feeling among them and inducing them by future loyalty to contribute to the success of the company's operations, the sales were to be made to those who were then employees, not those who had formerly been employees. This was evidently done with a view to its effect upon the future operations of the corporation. William Harvey Willcox had at that time been dead for four years and his estate had no interest in the future operations of the corporation. It would be manifestly inequitable to take any part of the income which had accrued during his life tenancy in order to make good to the principal of the trust fund any depreciation resulting from the sale of those 400 shares of stock to employees. The sale of 3,600 shares of stock at $62.50 per share could only have been for the purpose of securing additional capital, with a view to extending the business and increasing the future profits. This stock was first offered, at the price stated, to the old stockholders, if the price fixed had been such as to warrant a premium for the options to take it, that premium would have been the property of the principal of the trust fund: Moss's App., 83 Pa. 264; Biddle's App., 99 Pa. 278; Smith's Est., 140 Pa. 344; Thomson's Est., 153 Pa. 332; Eisner's

Est., 175 Pa. 143. If the price fixed for the sale of the new stock had exceeded the book value of the old shares and it had been sold at that advantageous figure, the result would have been to increase the book value of the old shares. This appellant could not, however, have derived any advantage from that increase. The decrease in the book value of the shares resulting from the sale of these 4,000 new shares was, it is true, not large, but the principal of the trust fund was not entitled to be reimbursed out of the dividend for that particular element of the decrease in the book value of the stock. This was a hazard incidental to the ownership of the stock.

The stock dividend of 3,000 shares at par involves an entirely different question. That was a distribution of the surplus of the corporation, and it is to be dealt with as a distinct transaction. If that dividend had been $150,000 cash, the income of this trust fund would have been entitled to its proportionate share of the $149,-772.43. The dividend to the trust estate would have been $12,480, out of which $12,461 must have gone to the income and $19 to the trustee, as principal; Boyer's App., 224 Pa. 144; Stokes' Est., 240 Pa. 277. The vice of the appellant's argument is that it fails to distinguish between a cash dividend and the dividend which was actually declared, viz: 249 shares of stock, at par, and $30 in cash. Now, it is upon all hands admitted that the 249 shares of stock, after the whole 12,000 shares of stock had been issued, were still worth $64.26 per share, or, in the aggregate, $16,000.74, to which add $30 and we have a total dividend of $16,030.74. This is so because these shares of stock are not only entitled to their share in the unimpaired capital, which is $50 per share, but they are also entitled to share in the surplus fund which had accumulated prior to the death of the testator. It is too clear for argument that this stock dividend impaired the value of the 416 shares, which were the principal of the trust fund. Entirely apart from the slight decline in the value of the shares resulting from the sale of the

other 4,000 shares, the issue of these 3,000 shares as a stock dividend impaired the principal of the trust estate, and the amount of that impairment is readily ascertainable. The surplus of the corporation on September 1, 1915, was $276,026.57; deduct from this the stock dividend of $150,000 and we have left a surplus of $126,026.57. The capital which had previously been 5,000 shares was by the stock dividend, alone, increased to 8,000 shares, at $50 per share, or $400,000, add to this the surplus which remained, $126,026.57, and we have a total capitalization $526,026.57. Divide this capital by 8,000 and we have $65.75 as the value of each share. The shares which had been worth $75.25 were, by the stock dividend of 3,000 shares alone, reduced to the value of $65.75 per share; that is, the 416 shares which had been worth $31,304 were by the dividend reduced in value to $27,352. The impairment in value of the principal of the trust fund is, therefore, $3,952. The principal of the trust estate is under the rule announced in Earp's App., 28 Pa. 368, and uniformly followed in the cases hereinbefore cited, entitled to be reimbursed to the amount of this impairment, $3,952, out of the stock dividend to be distributed. In determining the number of shares of stock which are to be distributed to the trustee as principal, in order to make up the amount of the total impairment, the shares must be valued at $65.75, as they were to that amount only depreciated in value because of the stock dividend. It is but just to here observe that the necessity for this appeal was no doubt caused by the insistence of the appellant in the court below that the entire issue of 7,000 shares of stock should be considered as one transaction and that, because it involved the issue of 4,000 shares in addition to the stock dividend, no part of the impairment of the principal ought to be taken out of the stock dividend. The court below was clearly right as to the legal principles involved, but application of them involved a complicated set of figures, and the court

was entitled to the assistance of counsel in the solution of the problem.

The decree is reversed to the extent above indicated, and the record is remitted to the court below that the decree may be modified in accordance with the views expressed in this opinion.