## Harkness's Estate.

*Trusts and trustees—Principal and income—Stock dividends—Rights of life-tenant and remainderman—Oil stocks—Earp's Appeal—Due process of law.*

1. The court can take judicial notice of the nature of an oil lease, but not of the character of the assets of an estate which consists in part of the stock of a number of corporations scattered all over the United States. If it be a fact that stock dividends claimed by the remainderman consist of oil stocks and represent accumulated receipts from oil wells and pipe-lines, and are a wasting investment, so that the rule of law applicable is that with respect to royalties from oil wells, the burden of establishing such facts rests upon the claimant.

2. The rule laid down in Earp's Appeal, 28 Pa. 368, applies both to stock and cash dividends.

3. The Due Process Clause of the 14th Amendment means due process of law in an orderly proceeding before a competent tribunal after due notice; the amendment does not require the state courts to follow the Federal courts in deciding questions of state law which arise in the administration of decedents' estates.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1911, No. 335.

The essential and relevant facts appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—The account is filed in order that the rights of the parties in sixteen stock dividends of the various Standard Oil Companies may be determined.

A stipulation of facts, signed by all parties in interest or their counsel, is hereto annexed and made part of this adjudication.

Mr. Edwards, on behalf of the guardian of the minor remaindermen, contends:

(a) That owing to the nature of oil and the uncertainty of the time of its exhaustion, we should hold that the whole value of the oil out of the land was only the equivalent of the whole value of the oil in the land, plus the cost of equipment to remove and market it, and that only the sums distributed in cash by the corporation should be considered income to the life-tenants.

(b) That all of these stock dividends, so-called, must, in view of the decision of the Supreme Court of the United States in Eisner v. Macomber, 252 U. S. 189, be held to be capital, and he contends that the people, by the 16th Amend-

ment to the Constitution of the United States, conferred upon the Congress the power to tax incomes without apportionment among the states; that attempts to tax stock dividends as income brought about a judicial ascertainment of their nature, resulting in a finding of fact and of law that stock dividends were capital, as well for purposes of the income tax law as for distribution between tenants for life and remaindermen; that this finding declared a property right in these stock dividends which is vested in the remaindermen and is secured to and protected for them by the 14th Amendment to the Constitution of the United States.

I am unable to follow him in his argument, and both of his contentions are dismissed. Suffice it to say, that, as to the second point, Stokes' Estate, 240 Pa. 277, and the long line of cases following it, lay down the law for Pennsylvania, and the rule of the Supreme Court of the United States in Eisner v. Macomber, 252 U. S. 189, can have nothing to do with stock dividends declared to the estates of Pennsylvania decedents.

As to Mr. Edwards's first point, there are no facts in the record to support his contention. These companies are all going-concerns, exercising their corporate franchises. There is nothing to show that they are in liquidation or that they are simply exhausting the oil in their wells without thought of to-morrow; in the absence of such testimony, I assume that these companies are managed in a businesslike way, that they protect themselves from the oil at the edge of their properties being taken by adjoining owners, that they have taken such safeguards as such corporations usually take in building up a contingent fund to allow for depletion of capital account and in the purchase and drilling of new wells. So far as any of these companies are operating pipe-lines, I likewise assume, in the absence of testimony, that they are being managed in a skillful and businesslike way.

Counsel for the guardian, in support of his contention, has cited certain cases which I will briefly comment on.

In Blakley v. Marshall, 174 Pa. 425, Mr. Chief Justice Sterrett said, at page 429: "If there be life-tenants and remaindermen, the former are entitled to the enjoyment of the fund (i. e., interest thereon) during life, and at the death of the survivor, the corpus of the fund should go to the remaindermen. This is as nearly a just and equitable distribution as can be made." This was a case wherein a deed of trust provided that the trustees were to receive the royalties, invest them, and pay over the interest annually arising from this fund to certain life-tenants; while these provisions related to certain oil-producing wells in existence at the time of the making of the trust, certain other wells were drilled on lands under which oil was later discovered. These wells were not opened before the trust was created, and, hence, being opened thereafter, would come under the well-known rule that royalties must be set aside for the remaindermen, meanwhile the income thereof being paid to the life-tenants.

In Marshall v. Mellon, 179 Pa. 371, it is stated in the syllabus: "Where no oil or gas operations have been commenced on land before an estate for life has accrued, the tenant for life has no right to operate for oil or gas himself, and cannot give such a right to any person by lease." It is clear that this principle has nothing to do with the stock dividends now before me.

In Deffenbaugh v. Hess, 225 Pa. 638, the coal in question was "unopened, unmined and undeveloped" at the time of the death of the decedent.

In Findley v. Warren, 248 Pa. 315, it was held that the life-tenant of oil lands, not previously explored, could not claim the royalties arising under a lease.

Harkness's Estate.

The income before me for distribution is dividends from corporations operating oil wells. They are well-established companies that have been in business for years. All of them (or their predecessors) were operating before the death of this decedent in 1910. Thereafter, even if they were mere oil leaseholds belonging to the decedent at the time of his death and opened and operated by him in his lifetime, the income therefrom would belong to the life-tenants; unfortunately for the remaindermen, the facts contained in the above-cited cases do not exist in the matter now before me.

*George J. Edwards, Jr.,* for exceptant.

*Robert W. Skinner, Jr.,* and *William P. Davis,* contra.

VAN DUSEN, J., Nov. 21, 1924.—This account was filed by the trustees for the purpose of getting an adjudication apportioning stock dividends between principal and income. From an examination of the stipulation, testimony and other facts in the record, the auditing judge divided the stock under the Pennsylvania rule established by Earp's Appeal, 28 Pa. 368, so as to preserve the value of the stock at the time of the decedent's death for principal and to give all the rest to income.

The guardian *ad litem* for the remaindermen has excepted to this action and has made the following points:

1. It is asserted that these stock dividends are all "oil stocks" and represent accumulated receipts from oil wells and pipe-lines, which are wasting investments; and that, therefore, they are all principal, following the Pennsylvania law with respect to royalties from oil wells received directly by individuals. If the facts were so and were fully developed, the result might follow in whole or in part. There is, however, no evidence that these stocks represent accumulated receipts from oil wells, and we are asked to take judicial notice thereof. We can take judicial notice of the nature of an oil well, but we cannot take judicial notice of the character of the assets and of the operation of fourteen different companies scattered all over the United States, some of which do not even have the word "oil" in their title. The burden of proof is on the remainderman: Boyer's Appeal, 224 Pa. 144; Stokes' Estate (No. 1), 240 Pa. 277.

2. The exceptant also attacks the Pennsylvania rule as applied to dividends declared in stock and not in cash. It is earnestly argued that the rule is sound only as to extraordinary cash dividends, and that stock dividends are entirely different.

The Supreme Court of the United States in Towne *v.* Eisner, 245 U. S. 418, and Eisner *v.* Macomber, 252 U. S. 189, with respect to income tax, and in the earlier case of Gibbons *v.* Mahon, 136 U. S. 549, with respect to the rights of life-tenant and remainderman, have decided that a stock dividend is not really a distribution of anything at all, but is a mere rearrangement of the muniments of title. On the other hand, four judges dissented in Eisner *v.* Macomber, and were of the opinion that a stock dividend is a real distribution of profits.

This difference of opinion indicates that a real question exists which it would be interesting to examine if we were at liberty to do so. The Pennsylvania rule relates to extraordinary dividends, and assumes that there is no difference between stock dividends and cash dividends. But the leading case of Earp's Appeal concerned stock dividends, and so did the cases of Philadelphia Trust, Safe Deposit and Insurance Company's Appeal, 1 Monaghan, 230; Sloan's Estate, 258 Pa. 368, and Willcox's Estate, 66 Pa. Superior Ct. 182; and such cases are of constant occurrence in the business of this court. While

no such discussion of the question appears in our reported cases as that by which we are enlightened in Eisner *v.* Macomber, we believe that, in view of our settled law, the Supreme Court would also feel themselves bound by authority as intimated in Stokes' Estate (No. 1), 240 Pa. 277. Though that was a case of cash dividend, the court referred in their opinion to the Massachusetts rule which assigns all stock dividends to principal, and said: "If such a rule is desired in Pennsylvania, we think the change should be made by the legislature rather than by the courts."

3. It is also argued that, in view of the decisions of the Supreme Court of the United States referred to, a decision by a state court, based on a contrary principle in matters not concerning income tax, but concerning division between life-tenant and remainderman, is a deprivation of property without due process of law and violative of the 14th Amendment of the Constitution of the United States, and that state courts, in matters which are solely within their own jurisdiction, must, nevertheless, follow those decisions. We are unable to follow this argument. Within its sphere the State law is supreme. The State courts have jurisdiction to administer this trust. That they do not see the law as other high authority sees it, is not a failure of due process of law. Otherwise, any difference of opinion on any point of law with the Supreme Court of the United States would violate the 14th Amendment. What due process of law requires is an orderly proceeding before a competent tribunal after due notice. It does not require all courts to think alike.

The exceptions are dismissed and the adjudication is confirmed absolutely.