# Estate of Zadok L. Eisner.    Sarah Eisner's Appeal

175   143
198   143
f 198  222
175   143
201   525

*Corporations—Life estate—Remainder man—Principal and income.*

The property of a corporation, after payment of liabilities, belongs to the existing stockholders, who, therefore, are entitled to any and all enhancements of its original value; and such enhancements belong not to the tenant for life, but to the remainder man.

The right to subscribe for new shares at par upon an increase of the capital stock, which is an incident of the ownership of the stock, does not

belong, as a privilege, to the life tenant, but such an increment must be treated as capital, and be added to the trust fund for the benefit of the remainder man. This is equally the rule whether the trustee subscribes for the new stock for the benefit of the trust or sells the right to subscribe for a valuable consideration; in either event the increase goes to the corpus.

Where a corporation sells a part of its franchise and property and distributes the proceeds of the same as a dividend among its stockholders, such dividend, as between a life tenant and remainder man, is capital and not income.

Where a right is given to the stockholders of one corporation to purchase the stock of another corporation, the price brought by the sale of the subscription right is a profit incidental to the ownership of the stock of the first corporation, and is income and not principal.

Argued April 6, 1896.   Appeal, No. 210, Jan. T., 1896, by Sarah Eisner, from decree of O. C. Phila. Co., Oct T., 1885, No. 164, overruling exceptions to adjudication.   Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Exceptions to adjudication.

The facts appear by the adjudication of PENROSE, J., which was as follows:

The testator died October 19, 1884. By his will, proved November 3, 1884, he gave the residue of his estate to the accountant in trust to pay the net income and interest of the personal estate, and the net rents, issues and profits of the realty to his wife, Sarah Eisner, for life or during widowhood, and at the expiration of her estate to his children for life, with ultimate limitation of principal to his grandchildren, issue, etc.

The trust for Mrs. Eisner continues; the account having been filed for confirmation and for the purpose of having determined the question whether certain shares of stock received since the death of the testator are to be retained as capital or delivered to the cestui que trust for life as interest and income.

There were among the assets coming to the trustee 425 shares of the Frankford and Southwark Philadelphia Passenger Railway Company, the market value of which, or at least the value at which it was appraised at the time of the testator's death, was $220 per share. In 1889 the company increased its capital stock from $750,000 to $1,000,000, the amount being raised by giving to stockholders the right to subscribe to the new shares

1896.]                          Adjudication.

at $50 per share, in proportion to their holdings; and the estate thus became entitled to 141 new shares. After this increase the market price of the stock ranged from $250 to $275 per share.

In 1891 there was a further increase of capital of the company to $1,250,000, and in 1893 to $1,500,000, and afterwards to $1,875,000, with the right to stockholders, except as to the last issue, to take the new stock at $50.00 per share.

Of the issue in 1891 the estate received and paid for 134 new shares. The privilege of subscribing for the first issue of new stock in 1893 was sold by the trustee for $26,600, the additional increase from $1,500,000 to $1,875,000 was produced by the merger into the Frankford and Southwark Company of the Lombard and South Streets Passenger Railway Company, the property of the latter being purchased by the new stock (7500 shares) representing an additional capital of $375,000, which was given to the stockholders of the Lombard and South Streets Passenger Railway Company in place of the stock surrendered by them at the rate of one share for three and one third.

Of the 275 shares of new stock thus acquired by the testator's estate, 39 were sold—27 at $260.94 per share, and 12 at $220 per share—the first sale being in 1889, and the second in 1891; 236 shares of the new stock are still retained, making a total holding, with the 425 shares originally held, of 661 shares.

The various prices at which the stock sold from the date of the testator's death until the end of the year 1893 are set forth in the statement of facts agreed upon by counsel and hereto annexed.

In August, 1893, the property and franchises of the Frankford and Southwark Company and its leased lines were leased to the Electric Traction Company for a period of 999 years, and it was provided, among other things in the lease, that there should be given to the Frankford and Southwark Company, in consideration of the transfer to the lessee, 10,100 shares of stock of the Lehigh Avenue Passenger Railway Company, and 10,100 shares of Omnibus Generale Company, and of the agreement of the lessor company to subscribe for 18,750 shares of stock of the lessee company at par, 15,648 fully paid shares of stock of the lessee company, which should be retained, however, until the payment in full of the stipulated subscription for 18,750

shares, when it should be distributed pro rata among the stockholders of the lessee company—the Frankford and Southwark Company. Under this arrangement the estate of the testator received on the 661 shares of the Frankford and Southwark stock held by it 275 shares of the 15,648 shares of Electric Traction Company stock, which had been so acquired, and there was also given to it the right to subscribe for 323½ of the 18,750 shares which the Frankford and Southwark Company had contracted to subscribe for in the lease. This privilege was sold by the trustee for $1,818.97. The 275 shares of Electric Traction stock were retained.

In 1894, up to October 17, the estate, by reason of holding these 275 shares, became entitled to subscribe for 244 new shares at $50.00 per share; which privilege was sold for $3,172.

As holders of 661 shares of Frankford and Southwark stock, it became entitled to subscribe for 330½ shares of Electric Traction stock, and as holders of 50 shares of Second and Third Streets Passenger Railway Company stock it became entitled to subscribe for 25 shares of Electric Traction stock at $50.00 per share. The privilege was sold as to 330½ shares, and the balance, 32 shares, were subscribed and paid for.

Afterwards as holders of 307 shares of Electric Traction Company stock, the estate became entitled to subscribe for 307 shares of new stock of that company at $50.00 per share. It sold the right as to 244 shares, and with the proceeds subscribed for 63 shares, making, with the 32 shares previously held, 95 shares.

All of the stock so acquired in the Frankford and Southwark Company and the Electric Traction Company, and all the moneys derived from the sale of such new stock, or from the privilege of subscribing for it, have been carried into the trustee's account as capital. On behalf of Mrs. Eisner it is claimed that she is entitled to both stock and money, after deducting subscription cost as income.

Apart from the decided cases, it is difficult to see how the claim of the cestui que trust, as far as concerns the Frankford and Southwark Company stock, etc., can be sustained. An increase of capital by the issue of new stock to persons paying for it its par value, implies the very reverse of profits earned. The fact that the privilege of subscribing for it is given to

existing stockholders, and that it may be sold by them at a premium is far from proving that the premium is to be regarded as income, the payment or withdrawal of which leaves the original capital unimpaired. The property of a corporation, after payment of liabilities, belongs to the existing stockholders, who therefore are entitled to any and all enhancements of its original value; and such enhancement belongs not to a tenant for life, but to the remainder man: Schofield v. Redfern, 32 L. J. Ch. 627; Hubley's Estate, 16 Phila. 327; Middleton's Appeal, 103 Pa. 92. When new stock is issued at par the actual increase of capital is precisely the amount thus received by the company, and if the new stock has, at the time, an intrinsic value beyond what was paid for it, this presumptively can only be because the holders of the new stock have been put on a footing of equality with holders of old stock, and thus become entitled to share with them in a distribution of assets, should the company be dissolved. The gain of the new stockholders is the precise measure of loss of intrinsic value of the capital of the old stockholders. This is very clear. The capital of the Frankford and Southwark Company was originally $750,000, divided into 15,000 shares. In 1884 the value of this capital, as indicated by the price at which the stock was selling, was $3,300,000, or $200 per share. The issue of 5,000 shares of new stock in 1889, at $50.00 per share, added $250,000 to the capital, which thus became $3,550,000, divisible among 20,000 shares, being $177.50 per share instead of $200—a direct loss to the original stockholders of $42.50 per share. Market values are no criterion. It is for this reason, no doubt, that the opportunity to subscribe is first offered to existing stockholders.

But the question has been decided adversely to the claim by the cestui que trust as to this very stock in Smith's Appeal, 140 Pa. 344, following Moss's Appeal, 83 Pa. 264; Biddle's Appeal, 99 Pa. 278, etc. It is therefore no longer open for consideration so far as the orphans' court is concerned, and it may be added that the decision is in strict accordance with what is said by the text-books to be the law on this subject. In Cook on the Law of Stock and Stockholders, section 559, it is stated, as the result of the numerous authorities there referred to, " The right to subscribe for new shares at par upon an increase of the capital stock, which is an incident of the ownership of the stock, does

not belong, as a privilege, to the life tenant, but such an increment must be treated as capital, and be added to the trust fund for the benefit of the remainder man.   This is equally the rule whether the trustee subscribes for the new stock for the benefit of the trust or sells the right to subscribe for a valuable consideration; in either event the increase goes to the corpus.   The subsequent income, however, of such interest belongs, as of course, during the continuance of the life tenancy to the life tenant as income proper, the new shares are part of the corpus, and the life tenant being entitled to the income from the corpus, takes the income from the accretions thereto."

The distribution of shares of the Electric Traction Company among the stockholders of the Frankford and Southwark Company falls within the principle of Vinton's Appeal, 99 Pa. 434. The shares distributed were received in payment for shares of the Lehigh Avenue Railway Company and of the Omnibus Generale Company, forming part of the assets of the Frankford and Southwark Company.   These assets, upon dissolution of the latter company, would have been distributable among the stockholders as part of their capital.   Whether they were purchased by it with moneys derived from increase of capital by issue of new stock, or with profits previously earned, is not very material; it was not shown that any of the profits used for the purpose, if any were so used, were earned during the life tenancy.   If the stock originally held were capital, as between tenant for life and remainder man, the rights of the parties were not affected by a change of securities.   In point of fact, and as appears by the statement of facts agreed upon by counsel, the shares of stock of the Omnibus Generale Company were part of the assets of the Lombard and South Streets Company, purchased as above by the Frankford and Southwark Company, and thus added to its capital.   The Lehigh Avenue Passenger Railway stock was purchased by the Frankford and Southwark Company in 1892, when $252,500 were paid, presumably with moneys received from the increase of capital in 1891.   A further payment of $50,500 in 1893 brought the total investment up to $303,000.

As the shares of Electric Traction Company stock received under the distribution of these 15,648 shares among the stockholders of the Frankford and Southwark Company are, for the

reasons mentioned, to be regarded as capital, it follows, under the principles and decisions referred to, with regard to the increase of capital by the Frankford and Southwark Company, that the increment resulting from time to time from the right given to the holders of these shares to subscribe for new stock must also be treated as capital.

A different question is presented, however, with regard to the stock of the Electric Traction Company, the right to subscribe to which was given to the stockholders of the Frankford and Southwark Company and the stockholders of the Second and Third Street Company. It is clear that the stock of neither of these companies could be reduced in value or affected by the increase in the number of shareholders of the Electric Traction Company, and a case is thus presented which falls directly within the doctrine of Wiltbank's Appeal, 64 Pa. 256. The "price brought by the sale of the subscription right, and the premium of the subscribed stock, are an incidental and in one sense an accidental profit, following the ownership of the 'Frankford and Southwark Company stock' as the product of an advantage belonging to it."

Wiltbank's Appeal has never been overruled, although it has not been followed where the subscribers acquired their right as such by reason of their being already holders of stock, the intrinsic value of which would manifestly be impaired by increasing the number of stockholders. Here there can be no such impairment.

All the profits derived from the right to subscribe given to stockholders of the Frankford and Southwark Company, or to holders of stock of the Electric Traction Company, acquired by reason of such right to subscribe belong, in the opinion of the auditing judge, to the tenant for life, to whom they will accordingly be paid and transferred.

Exceptions to the adjudication were overruled by the court in banc.

*Errors assigned* were in overruling exceptions to adjudication.

*William Jay Turner*, for appellant.—Stock purchased by reason of an option or privilege is the property of the life tenant: Wiltbank's App., 64 Pa. 256.

*Richard C. Dale*, for appellee.

PER CURIAM, April 13, 1896 :

The correctness of the decree from which this appeal was taken was amply vindicated by the learned auditing judge, whose opinion was adopted by the orphans' court in banc. There is nothing in any of the questions involved that requires further elaboration. The decree is affirmed on the opinion referred to, and the appeal is dismissed with costs to be paid by appellant.