*In re* JOY'S ESTATE.

1. Corporations—Surplus is Property of Corporations Until Distributed as Cash Dividends.

Until distributed as cash dividends, surplus is property of the corporation, the same as other corporate assets, and may be employed as capital, and stockholder is not entitled to any portion of it, except that he may have an equitable right to insist that part of it be divided among the several stockholders.

2. Trusts—Cash Dividends Are Income But Stock Dividends Belong to Corpus of Estate.

Where testator's will gave residue of his estate to trustees and directed them to pay "net revenues" thereof to his widow, with remainder over, subject to certain other bequests, to residuary legatee, the widow was entitled to all cash dividends declared on corporate stock in her lifetime, but stock dividends so declared belong to the corpus of the estate and go to the residuary legatee.

Error to Wayne; Gillespie (Glenn C.), J., presiding. Submitted January 29, 1929. (Docket No. 39, Calendar No. 34,102.) Decided June 20, 1929.

Henry B. Joy, Richard P. Joy, and Frederic W. Dennis, as trustees under the last will of James Joy, petitioned to be discharged after filing final account. From an order of the probate court distributing certain stock dividends to Frederic W. Dennis as executor of the estate of Emilie A. Joy, life tenant, instead of the trustees of the Presbytery of Detroit, residuary remainderman, the remainderman appealed to the circuit court. From a judgment modifying the order of the probate court, the executor of

the estate of the life tenant and remainderman bring error. Reversed and remanded.

*Miller, Canfield, Paddock & Stone,* for trustees of the estate of James Joy.

*Bishop & Weaver,* for executor of the estate of the life tenant.

*Corliss, Leete & Moody (Oxtoby, Robison & Hull,* of counsel), for remainderman.

SHARPE, J. The last will and testament of James Joy, of Detroit, after making several specific bequests, gave the residue of his estate to three trustees, and directed them to pay to his widow, Emilie A. Joy, "the net revenues thereof" during her lifetime, with remainder over, subject to certain other bequests, to the trustees of the Presbytery of Detroit. Mrs. Joy died on January 29, 1924, leaving a will, in which Frederic W. Dennis was named executor.

Mr. Joy at the time of his death owned 1,504 shares of stock of the Detroit Copper and Brass Rolling Mills, of the par value of $25 each, and 562 shares of stock of Parke, Davis & Company, of the same par value. Both were Michigan corporations. While the estate was in the hands of the trustees, these companies paid considerable cash dividends, and in addition thereto declared stock dividends as follows: The Rolling Mills 66-2/3 per cent. on April 22, 1920, and 20 per cent. on December 12, 1922, and Parke, Davis & Company 100 per cent. on December 15, 1922.

The issue here presented is whether these stock dividends, or any part of them, belong to the estate

of Mrs. Joy, the beneficiary, or to the Presbytery, the residuary legatee. The probate court awarded them to the estate of Mrs. Joy. The circuit court, on appeal, apportioned them between this estate and the residuary legatee. The residuary legatee and the executor of Mrs. Joy's estate both seek review of the judgment entered by writ of error.

While this court has had occasion to consider wills, under the provisions of which stock dividends came into the hands of trustees, we were able from the language used to ascertain the intent of the testator as to the distribution which should be made of them. *Poole* v. *Union Trust Co.,* 191 Mich. 162 (Ann. Cas. 1918 E, 622); *Billings* v. *Dobbins,* 221 Mich. 395; *Mackellar* v. *Stebbins,* 244 Mich. 170. This will contains no expression of such an intent as will justify us in resting decision thereon.

In common practice, a corporation engaged in business distributes its net earnings to its stockholders at regular intervals in what are called ordinary cash dividends, retaining a part thereof, either for the purpose of security against possible future losses and business depression or for additional working capital, in a fund which is usually referred to as surplus. These cash dividends are, of course, properly treated as income. Until so distributed, the surplus is the property of the corporation the same as other corporate assets, and may be employed as capital. The stockholder is not entitled to any portion of it except that he may have an equitable right to insist that a part of it be divided among the several stockholders. *Dodge* v. *Ford Motor Co.,* 204 Mich. 459 (3 A. L. R. 413). Occasionally, an extraordinary dividend, either in cash or stock, is declared. By the former, a part of the surplus, in addition to the regular cash dividend,

is distributed. By the latter, the corporation capitalizes a part of its surplus by transferring it to fixed capital, and to the extent thereof it issues additional capital stock *pro rata* among its stockholders by a stock dividend. It is with the latter that we are here concerned, and the question presented is whether the stock dividends paid to the trustees should be distributed to those to whom the income from the trust property is given or is capital to be awarded to those entitled to the corpus or principal of the trust fund on the termination thereof, or whether a part thereof is income and a part capital, to be distributed to those respectively entitled thereto.

Out of the many theories presented to and considered by the courts of this country, three several rules have been adopted governing such distributions. Under what is known as the Kentucky rule, such dividends, "whether of stock or payable in money, are non-apportionable, and must be considered as accruing in their entirety as of the date when they are declared" (*Cox* v. *Gaulbert's Trustee,* 148 Ky. 407, 414 [147 S. W. 25, 28]), and are awarded to the life beneficiary. This rule finds support in the decisions in the State of Delaware, and in the early decisions in the State of New York.

The supreme court of Massachusetts, in *Minot* v. *Paine,* 99 Mass. 101, 108 (96 Am. Dec. 705). early announced:

"A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital."

This may fairly be said to be the rule adopted by the English courts, and by the supreme court of the United States (*Gibbons* v. *Mahon,* 136 U. S. 549 [10

Sup. Ct. 1057], reaffirmed in *Towne* v. *Eisner*, 245 U. S. 418 [38 Sup. Ct. 158, L. R. A. 1918D, 254], and *Eisner* v. *Macomber*, 252 U. S. 189 [40 Sup. Ct. 189, 9 A. L. R. 1570]), and by the courts of last resort in the following States: Connecticut, Georgia, Illinois, Maine, North Carolina, Ohio, Rhode Island, and West Virginia.

What is spoken of as the Pennsylvania rule was first announced in *Earp's Appeal*, 28 Pa. 368. It is thus stated in *Smith's Estate*, 140 Pa. 344, 352 (21 Atl. 438, 23 Am. St. Rep. 237) :

"It is well settled in this State that, when the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits, which have accumulated in the lifetime of the testator but which are not divided until after his death, belong to the corpus of his estate; whilst the dividends of earnings made after his death are income, and are payable to the life-tenant, no matter whether the dividend, be in cash, or scrip, or stock."

This rule has been consistently adhered to by the supreme court of that State, and may fairly be said to have been adopted by the courts of last resort in California, Maryland, Minnesota, New Hampshire, New Jersey, New York, South Carolina, Vermont, and Wisconsin. The decisions of these courts, as well as those favoring the Kentucky and Massachusetts rules, are reviewed at length in a copious note of many pages in 24 A. L. R., beginning on page 9, and need not be particularly cited in this opinion.

The Massachusetts rule is said to be arbitrary and inequitable; that it does not work justice as between the beneficiaries entitled to the income and the remaindermen. Rules of law, when not fixed by statute, are established to provide regulations for the

orderly transaction of business by persons affected by them. They should be simple and easily understandable, and, when applicable to business transactions, should be as practical as the circumstances will permit. That such a result is reached by applying the Massachusetts rule admits of no doubt. When governed by it, a trustee may always be certain that he is right in the disbursements made by him. In the sense that he has no discretion, it is arbitrary. But, in common thought, we apprehend that the average man regards cash dividends as income and stock dividends as additions to his capital, and that he has this in mind when establishing a trust of this nature. If, however, he desires that the income beneficiary shall receive the whole or any part of the stock dividends distributed during the trust period, he may so direct, and the trustee will be governed thereby.

So much has been written in support of these several rules that we would but substitute words if we were to cover the whole field of thought thereon. In *D'Ooge* v. *Leeds,* 176 Mass. 558, 560 (57 N. E. 1025), the court said:

"In considering the distribution to determine its character, substance and not form is regarded. The simple question in every case is whether the distribution made by the corporation is of money to be spent as income, or is of capital to be held as an investment in the corporation. While this arbitrary rule may sometimes defeat the intention of the testator, in most cases it accomplishes the result intended, and there were practical considerations as well as principles which required the adoption of it. The property of a corporation, in whatever way obtained, belongs, in the first instance, to the corporation and not to the stockholders. It may be used and managed as the interests of the corporation require.

Sometimes it is desirable to divide the greater part of the earnings as income as soon as they are received. Sometimes it is important to retain large accumulations of earnings as additions to the original property and to make them a part of the permanent capitalization. Often it is desirable to keep in the business a large surplus to provide for losses or other contingencies which cannot be foreseen. For these reasons, as well as because of ownership, it is well that corporations should be permitted to determine for themselves how much of their earnings they will divide as income and how much they will retain as capital.

"Courts have often suggested the desirability of ascertaining whether the distribution in question is from a surplus accumulated prior to the creation of the trust, or from one accumulated during its continuance. Many decisions in England have been affected more or less by this consideration. See *Bouch* v. *Sproule,* 12 App. Cas. 385 (24 A. L. R. 24, note), and *Sproule* v. *Bouch,* 29 Ch. D. 635, and cases cited. But in Massachusetts, and we think now in England, it is held to be impracticable in most cases to conduct such an inquiry in the courts with justice to the parties. It would often be impossible to tell what part of an apparent surplus on hand at a particular time was needed for the protection of the capital, or to determine just when the surplus was earned. The conditions which create expenses often come into existence a long time before the expenditures are made, and the returns of one period are often the fruit of effort or outlay made long before. In cases of corporations, therefore, our court does not inquire further than to ascertain whether the distribution is of money to be used as income, or is of capital to be continued in the business."

In *Gibbons* v. *Mahon, supra,* an appeal from the supreme court of the District of Columbia involving a similar question to that here presented, the court said (page 558 [10 Sup. Ct. 1058]):

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works' and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a certain yearly rate, 'in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors.' *New. York, etc., Railroad Co.* v. *Nickals,* 119 U. S. 296 (7 Sup. Ct. 209).

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof.

"Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock, for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee; or should be distributed and paid out as income, to the tenant

for life or for years, excluding the remainderman from any participation therein; is a question to be determined by the action of the corporation itself, at such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock; and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts, as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a master in chancery or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only.''

A stock dividend does not work a severance of earnings from other corporate assets. What belonged to the corporation still remains such. When the surplus was capitalized, its earning power was in no way lessened. The beneficiary would thereafter be entitled to receive the income derived by the trustees from this additional stock held by them. Should the whole or any part of the stock dividend have been allotted to her, she would then have had an integral interest in the assets of the corporation, which she might have disposed of at will. If the purpose of the trust was to protect against a spendthrift child, as it might well have been by the language used, the force of this reasoning would be apparent.

Another result of the application of this rule may be noted: Suppose the trust provides for the payment of the income to A for life and thereafter to B for life, and let us assume that the estate consists

of 100 shares of stock in a corporation. If, during the lifetime of A, a stock dividend of 100 per cent. be declared which does not impair the actual value of the stock, A would be entitled to it, and would thereafter receive the cash dividends from the 200 shares, while B, his successor in the trust, after A's death, would receive such dividends on but 100 shares and A's estate on the other 100. Can it be assumed that the creator of such a trust would not be equally desirous of securing an income from the entire stock interest to B as to A?

The object sought to be attained by the Pennsylvania rule is praiseworthy. It seeks to do justice between the life beneficiary and the remainderman by apportioning the amount of the stock dividend between them, if earned partly before and partly after the death of the testator.

In *Re Heaton's Estate*, 89 Vt. 550, 563 (96 Atl. 21, 27, L. R. A. 1916D, 201, 207), the court said:

"The courts that reject the Massachusetts rule generally agree that the action of the corporation converting earnings into capital gives them that character for all corporate purposes, but they hold that the action of the corporation does not bind the life tenant and remainderman and that either can always show the true nature and source of the dividend in spite of any act or declaration of the corporation."

But should the "act or declaration of the corporation" be disregarded? It must be assumed that a testator who holds stock in a corporation is familiar with corporate law and corporate management; that he realizes that any accumulated surplus belongs to the corporation, and that the individual stockholders have no enforceable right to any part thereof (ex-

cept as heretofore stated) unless it be apportioned to them by action of the board of directors; that such board may distribute the whole or any part thereof by declaring a cash dividend, or may capitalize any part of it by declaring a stock dividend.  As was said by an English court in *Bouch* v. *Sproule,* L. R. 12 App. Cas. 385, 397 (24 A. L. R. 24, note):

"When a testator or settlor directs or permits the subject of his disposition to remain as shares or stocks in a company which has the power either of distributing its profits as dividend or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under the testator or settlor in the shares, and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, enures to the benefit of all who are interested in the capital."

It is also said that the rule of apportionment is but the enforcement of the unexpressed but apparent intention of the testator.

"And then after all, the rule for the determination of controversies over dividends, between life tenants and remaindermen, should be to give to each just what the donor intended each to have.  As has been said, the intent of the grantor or testator is the pole star for the guidance of the courts." *Boyer's Appeal,* 224 Pa. 144, 153 (73 Atl. 320, 323).

We are not impressed that an intention to make an apportionable distribution can be so inferred. We apprehend that the ordinary person, when making provision for the payment of "net revenues" from the stock of corporations, will understand that it means the cash dividends payable therefrom.

Should he have received a stock dividend during his lifetime, he would not consider it as income. It could hardly be called an addition to his original investment, as by it he secures no greater interest in the assets of the corporation than he had before.

"Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution." *Eisner* v. *Macomber, supra.*

The practical difficulties which have been met with in applying the apportionment rule have been referred to in many cases. These are strikingly illustrated by a consideration of some of the decisions of the supreme court of Pennsylvania, in which the rule was first announced. Under it the trustee must determine when the earnings were accumulated. To that end he must fix a definite value upon the stock at the time of the testator's death, or at the beginning of the trust, and at the time the dividend is declared. If the effect of the dividend does not reduce the value of the stock, then all of such dividend is income. If the value is reduced, then, to the extent of the reduction, the stock dividend is capital and the balance income. But how shall the trustee ascertain such values? In *Earp's Appeal, supra,* the question was determined by a comparison of the market values. In *Smith's Estate, supra,* it was said:

"It is true the market value of the shares was not greatly, if any, impaired by the increase, but the question of value is to be determined, not by the fluctuations of the stock market, but by the actual assets held by the corporation: *Moss's Appeal,* 83

Pa. 264 (24 Am. Rep. 164) ; *Biddle's Appeal,* 99 Pa. 278. It is the intrinsic value of the shares, to be ascertained from the amount and value of the assets at the death of the testator, and at the time of the increase of the stock, which governs in the apportionment of the surplus profits."

In *Eisner's Estate,* 175 Pa. 143, 147 (34 Atl. 577, 579), it was said that "market values are no criterion." In *Stokes' Estate (No. 2),* 240 Pa. 288, 291 (87 Atl. 975, 976), the court said:

"The method pursued was that of taking the par value of the stock, and the surplus as it stood at the periods of comparison. For the purpose of a comparison of the real value of the assets, at the two periods, this method seems to be satisfactory."

This is but another way of stating that "book value" must control. That the writer of the note in 24 A. L. R. 9, heretofore referred to, so understood it is apparent from the quotation therefrom in *Mackellar* v. *Stebbins, supra.* But in *Thompson's Estate,* 262 Pa. 278 (105 Atl. 273), it was said that the court was not concerned with book value; that actual value alone should be considered. In *Dickinson's Estate,* 285 Pa. 449, 452 (132 Atl. 352), the "liquidating value of the stock" was referred to as a basis for making the comparison, and in *Jones* v. *Integrity Trust Co.,* 292 Pa. 149, 155 (140 Atl. 862, 864), the court said:

"that the 'going concern' value is a matter to which full weight must be given, is no longer an open question."

And added:

"Market value has nothing to do with such distributions; under all the situations which arise only the intact value is to be considered."

In *Re Osborne,* 209 N. Y. 450 (103 N. E. 723, 50 L. R. A. [N. S.] 510, Ann. Cas. 1915A, 298), the court at first directed that the percentage of the stock dividend which had accumulated after the commencement of the life estate should be treated as income and fixed the fractional amount thereof, but, on rehearing, said that such direction "was erroneous;" that,

"If the dividend is in stock the amount of impairment in money must be divided by the intrinsic value of a share of the new stock, and the quotient gives the number of shares to be retained to make the impairment good—the remaining shares going to the life beneficiary."

And added:

"Market value, good will and like considerations cannot be considered in apportioning a dividend."

The trustee must, however, under the apportionment rule, make a comparison of values at the inception of the life estate and the declaration of the stock dividend. Assuming that he must determine the real or actual intrinsic value, in which value as a "going concern" should be considered, we know of no method by which he may do so. While he might secure access to the books of the corporation, unless it be a foreign one, it would, we think, be impossible for him, or an accountant whom he might employ, to determine therefrom just when its earnings were accumulated, its losses sustained, or the increase in value of its assets occurred, and these must be specifically fixed as of the date when the values of the stock are to be determined. The value as a "going concern" might be largely increased or lessened from year to year by a change in corporate management.

This difficulty is further illustrated by the fact that in the case before us eminent counsel represent-

ing the life beneficiary, the residuary legatee, and the trustees of the estate disagree with the trial court and with each other in the application of the apportionment rule. That such a disagreement may at times be expected appears from the opening paragraph in *Jones* v. *Integrity Trust Co., supra* (a case decided by the court which originated the rule, and in which it has been enforced for more than 70 years):

"The question involved in this case is: How shall certain stock, received by the defendant trust estate as the result of an extraordinary stock dividend of twenty-five per cent., be divided between the corpus of the trust and the life tenant who is entitled to the income thereof? To this, the court below, appellant and appellee have each given a different answer. It is certain, therefore, that two of them must be wrong; in reality all three are."

The distinction between these several rules may be thus stated: Under the Massachusetts rule, a stock dividend, declared during the life interest, whether earned partly before or partly during such life interest, goes in its entirety to the corpus of the estate; under the Kentucky rule, it is treated as income and goes to the life beneficiary; and, under the Pennsylvania rule, it is apportioned between the corpus and the life beneficiary in such a way as to prevent loss to the corpus by a reduction of the actual intrinsic value of the shares as of the date when the life interest accrued.

These rules are also applicable to extraordinary cash dividends. While the Massachusetts rule may in some cases work a hardship to the life beneficiary in the distribution of a stock dividend, it may also greatly benefit such beneficiary in the distribution

of an extraordinary cash dividend, as the surplus from which it is distributed may represent earnings accumulated before the inception of the trust estate.

After due consideration of the reasons advanced by so many of our State courts for adoption of the Pennsylvania rule, we are of the opinion that Michigan should align itself with those in accord with the Massachusetts rule. In arriving at this conclusion, we are doubtless somewhat influenced by the practical difficulties, heretofore pointed out, which have been met with in applying a rule which provides for apportionment. When a testator may so easily express his intent with respect to such dividends, his failure to do so should not impose upon a trustee the necessity of securing decision by review in this court before he can safely make disbursement of the dividends received by him.

The rule once adopted in a State becomes a rule of property, and courts have been unwilling to change it. In *Ballantine* v. *Young,* 79 N. J. Eq. 70, 74 (81 Atl. 119, 120), the court said:

"As a matter of logic, it is difficult to resist the reasoning leading to the conclusion that stock dividends are, in fact, principal; for the life tenant, as is universally held, is not, in the absence of fraud, or improper conduct, entitled to the earnings until they are distributed. They are not, in fact, distributed, but, on the contrary, put permanently into capital account when new stock is, without any money equivalent, allotted to the whole body of stockholders."

It was, however, further said that "discussion is out of place" for the reason that an earlier decision (*Ashhurst* v. *Potter,* 29 N. J. Eq. 625), applying the apportionment rule, was controlling. "While this latter case stands, there cannot be any doubt as to what this court must do."

In *Stokes' Estate (No. 1)*, 240 Pa. 277, 282 (87 Atl. 971, 973), after referring to and stating the Massachusetts rule, it was said:

"If such a rule is desired in Pennsylvania, we think the change should be made by the legislature rather than by the courts."

It may be here noted that the legislature of the State of New York, in which State the courts at first seemed to follow the Kentucky rule (*In re Kernochan*, 104 N. Y. 618 [11 N. E. 149]), and later the Pennsylvania rule (*In re Osborne, supra*), amended its personal property law by adding the following section thereto:

"Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article." Laws of New York, 1926, Chap. 843.

The judgment entered will be reversed and set aside, and the cause remanded to the trial court with direction to enter a judgment directing the probate court for the county of Wayne to enter an order awarding the stock dividends in question to the residuary legatee. Both parties having appealed, no costs will be allowed.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, MCDONALD, and POTTER, JJ., concurred.