KIRBY, Respondent, v. KIRBY, et al, Appellants

(5 N. W.2d 405.)

(File No. 8566. Opinion filed August 29, 1942.)

**Louis H. Smith** and **C. J. Delbridge,** both of Sioux Falls, for Appellants.

**Tom Kirby,** of Sioux Falls, for Respondent pro se.

RUDOLPH, P.J. This case comes before the court upon stipulated facts, as follows:

"2. The defendant, Western Surety Company, is a corporation, duly organized and existing under the laws of the State of South Dakota, and among other things authorized to act as Trustee of the Estate of Joe Kirby, deceased.

"3. The plaintiffs are heirs of Joe Kirby, deceased, and the defendant, Western Surety Company, is Trustee of the Estate of Joe Kirby, deceased, appointed by his Last Will, which has been duly probated in the County Court of Minnehaha County, South Dakota.

"4. That there are no creditors of said Trust or Trust Property.

"5. By the Decree of Final Distribution of the Estate of Joe Kirby, deceased, dated and filed October 23rd, 1933, there was decreed and assigned to the Western Surety Company, as trustee only, with other property, Four Hundred Forty Two (442) Shares of the Capital Stock of the Western Surety Company.

"6. The powers and duties of the Trustee, Western Surety Company, as specified in said Final Decree as to the

other property, and also to the said Four Hundred Forty Two (442) Shares of the Capital Stock of the Western Surety Company are:

"(a) To collect all rents, dividends and profits of and from said property and to pay all taxes, repairs, maintenance, and other necessary or legal charges and expenses.

"(b) To sell any property bequeathed to it as Trustee and to invest the proceeds of such sale in such interest bearing securities as it may deem desirable.

"(c) To pay to the Widow, Ella Kirby, of Sioux Falls, South Dakota, during her life the net balance of all rents, dividends, and profits of and from said property after the payment of all taxes, repairs, maintenance and other necessary or legal charges and expenses which said net balance shall be paid to the said Widow, Ella Kirby, annually or oftener if the Trustee so desires.

"(d) 'Upon the death of the said Widow, Ella Kirby, the Trustee, Western Surety Company, by proper instrument shall transfer and deliver the Capital Stock of the Western Surety Company as follows: to Tom Kirby Four Hundred Forty Two (442) Shares of the Capital Stock of the Western Surety Company'.

"7. On the 17th day of September, 1941, the defendant, Western Surety Company, duly declared and issued a stock dividend out of surplus. The dividend on said Four Hundred Forty Two (442) Shares herein mentioned being Two Hundred Ninety Four (294) Shares.

"8. That Joe Kirby, deceased, the ancestor, died on February 8th, 1926, and the Final Decree of the County Court of Minnehaha County, South Dakota, as herein stated was duly entered October 23rd, 1933.

"9. That on the 8th and 9th days of February, 1926, the book value, as determined by Capital and Surplus, of a Share of Capital Stock of the Western Surety Company, was One Hundred Fifty Four and Sixty One Cents ($154.61). On October 23rd, 1933, the book value, as determined by Capital and Surplus, of a Share of the Capital Stock of

the Western Surety Company was One Hundred Forty Seven Dollars and Twenty One Cents ($147.21). That immediately before the Capital Stock Dividend was declared and issued as stated in paragraph seven (7) hereof the book value, as determined by Capital and Surplus, of a share of the Capital Stock of the Western Surety Company, was Two Hundred Ninety Five Dollars and Sixty Six Cents ($295.66). That immediately after the declaration and issuance of the Capital Stock Dividend as stated in paragraph seven (7) hereof, the book value as determined by Capital and Surplus of a share of Capital Stock of the Western Surety Company was One Hundred Seventy Seven Dollars and Thirty Nine Cents ($177.39). The increase of said book value as shown in this paragraph was from earnings.

"10. That the questions here presented are:

"(a) Does the Stock Dividend as declared and issued belong to the Plaintiff, Ella Kirby, and is it to be considered income of the Trust.

"(b) Does the Stock Dividend so declared become a part of the 'corpus' of the Trust.

"(c) If the Stock Dividend is a part of the 'corpus' of the Trust, is it to be allocated as an addition to the Four Hundred Forty Two (442) Shares of Capital Stock of the Western Surety Company to be ultimately distributed to the Plaintiff, Tom Kirby, thereby making Seven Hundred Thirty Six (736) Shares of the Capital Stock of the Western Surety Company to be ultimately distributed to Tom Kirby, or is it part of the general property of the Trust which can be sold by the Trustee under its powers as set forth in paragraph six (6) of this Agreed Statement."

The questions presented have been the subject of discussion in a great number of judicial opinions, and by recognized authorities on the subject of trusts. The net result has been an irreconcilable conflict of opinion. Two principal rules have been evolved, and referred to as the Massachusetts rule and the Pennsylvania rule. Under the Massachusetts rule, in the absence of an expressed intention of the settlor, stock dividends such as were declared by the West-

ern Surety Company on September 17, 1941, are held to be principal, under the ·Pennsylvania rule such dividends are held to be income. The decisions are reviewed at length in the note appearing in 130 A. L. R. 492. See, also, 33 Am. Jur., Life Estates, Remainders, Etc., §§ 371 to 422 incl. Referring to the conflict of judicial opinion, Scott on Trusts, vol. 2, page 1300, states:

"The authorities have been fairly evenly divided. Formerly there was a preponderance of authority in, favor of the Pennsylvania rule, holding that extraordinary dividends whether in stock or in cash are apportionable. The recent trend, however, has been in favor of the Massachusetts rule, holding that stock dividends are principal and that cash dividends are income."

The Michigan Court in Re Joy's Estate, 247 Mich. 418, 225 N. W. 878, 880, 72 A. L. R. 973, states concisely the two rules as follows:

"The Supreme Court of Massachusetts, in Minot v. Paine, 99 Mass. 101, 108, 96 Am. Dec. 705, early announced: 'A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital.' This may fairly be said to be the rule adopted by the English courts and by the Supreme Court of the United States (Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525, reaffirmed in Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254, and Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570), and by the courts of last resort in the following states: Connecticut, Georgia, Illinois, Maine, North Carolina, Ohio, Rhode Island, and West Virginia.

"What is spoken of as the Pennsylvania rule was first announced in Earp's Appeal, 28 Pa. 368. It is thus stated in Smith's Estate, 140 Pa. 344, 352, 21 A. 438, 23 Am. St. Rep. 237: 'It is well settled in this state that, when the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits, which have accumulated in the lifetime of the testator, but which are not

divided until after his death, belong to the corpus of his estate; whilst the dividends of earnings made after his death are income, and are payable to the life tenant, no matter whether the dividends be in cash, or scrip, or stock.'

"This rule has been consistently adhered to by the Supreme Court of that state, and may fairly be said to have been adopted by the courts of last resort in California, Maryland, Minnesota, New Hampshire, New Jersey, New York, South Carolina, Vermont, and Wisconsin."

In addition to the states listed above it may now be said that Indiana, Michigan, Missouri, and Nebraska have adopted the Massachusetts rule and Iowa and Tennessee the Pennsylvania rule. The Restatement of the Law of Trusts, has apparently in § 236(b) stated the Pennsylvania rule. Although the New York Court had accepted the Pennsylvania rule, the New York Legislature by statute in 1926 (N. Y. Laws 1926, Ch. 843, now Personal Property Law, § 17-a, Consol. Laws, c. 41) provided that stock dividends shall be principal.

Such is the state of the law upon the subject. It is now for this court to decide which of the two rules it will adopt. The trial court preferred the Massachusetts rule, and held the stock dividends to be principal. It perhaps should be here noted that this action concerns only stock dividends which have been declared from earnings that accrued since the death of Mr. Kirby. No question of cash dividends is presented, and we do not intend to announce by implication, or otherwise, any rule relating to cash dividends.

Of course the elemental fact that the settlor has failed to express an intention with regard to the dividends in question must be accepted, before the question, of which rule should be adopted, is reached. If an intention is expressed, this intention governs and it becomes unnecessary to apply or accept either or any rule. The trust instrument provides, "To pay to the Widow, Ella Kirby, of Sioux Falls, South Dakota, during her life the net balance of all rents, dividends, and profits * * *." We think it clear that the

use of the word "dividends" does not disclose an intention with regard to these extraordinary stock dividends. Especially is this true in this case. Mr. Kirby, the deceased, was one of the outstanding lawyers of this state for a great many years. Had he intended that these extraordinary stock dividends should go to the life beneficiary, it is only reasonable to assume that as good and as careful a lawyer as he, would have made some express provision for their distribution. Had he intended these stock dividends to go to the widow he would not have left it for the courts to say that this intention might be found in the provision which gives the "rents, dividends and profits" to the widow, when there is a practical unanimity of judicial opinion that the mere use of such words as quoted is not sufficient to disclose an intention that extraordinary stock dividends should go to the life beneficiary. Lauman v. Foster et al., 157 Iowa 275, 135 N. W. 14, 50 L. R. A., N. S., 531; In re Heaton's Estate, 89 Vt. 550, 554, 96 A. 21, 23, L. R. A. 1916D, 201; Boardman et al. v. Mansfield et al., 79 Conn. 634, 637, 66 A. 169, 170, 12 L. R. A., N. S., 793, 118 Am. St. Rep. 178; Rhode Island Hospital Trust Co. v. Bradley et al., 41 R. I. 174, 103 A. 486. And see cases cited in 33 Am. Jur., page 904, in support of the statement, "Moreover, the Courts have uniformly come to the conclusion that 'dividends', 'profits', 'earnings', and all similar words and phrases, are not sufficient, in the absence of more explicit directions, to indicate any intention that is not equally well expressed in the simple word 'income'." We find nothing in the trust instrument, as set forth in the stipulated facts, which indicates that Mr. Kirby, at the time of its execution, had in mind that these extraordinary stock dividends should go to the life beneficiary. The court must, therefore, look to the law to determine the questions presented.

█ So much has been written upon this general subject that nothing could be gained by an extended opinion. Sufficient to say is that we are impressed with the reasoning of the United States Supreme Court in the case of Gibbons v. Mahon, supra. The court said [136 U. S. 549, 10 S. Ct. 1058, 34 L. Ed. 525]:

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business or as an addition to its capital. Acting in good faith, and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income, or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years, or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part their discretion in this respect cannot be controlled by the courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a certain yearly rate, 'in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors.' [New York, L. E. & W.] R. Co. v. Nickals, 119 U. S. 296, 304, 307, 7 S. Ct. 209 [30 L. Ed. 363, 367, 368].

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainder-man, legal or equitable, thereof.

"Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee, or should be distributed and paid out as income, to the tenant for life or for years, excluding the remainder-man from any participation therein, is a question to be determined by the action of the corporation itself, at

such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock, and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a master in chancery or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only."

A concise statement from the English case of Bouch v. Sproule, L. R. 12 App. Cas. 385, 397, 24 A. L. R. 24, also appeals to our reason and is often quoted.

"When a testator or settlor directs or permits the subject of his disposition to remain as shares or stocks in a company which has the power either of distributing its profits as dividend, or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under the testator or settlor in the shares, and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, inures to the benefit of all who are interested in the capital."

We also note, as pointed out in Scott on Trusts, page 1302, that no court following the Pennsylvania rule "has been willing to follow it to its ultimate logical conclusion, and to treat the earnings of the corporation as for all purposes income to the shareholders. The rule is generally applied only when the earnings are distributed by the corporation among the shareholders in the form of a dividend."

After giving careful consideration to the reasons advanced in support of the Pennsylvania rule, we have concluded that the Massachusetts rule should govern in the disposition of the stock dividends here involved. That these dividends were extraordinary, and that their declaration

was not within the contemplation of Mr. Kirby at the time he executed the trust instrument, we believe is clear. They never lost their character as a part of the capital of the corporation. We conclude that the stock dividend here involved is a part of the principal and not income to be paid to the life beneficiary.

 Having held that these stock dividends are not income, we think it follows, under the facts presented, that they should, following the death of Mrs. Kirby, go to Tom Kirby under paragraph (d) of the trust instrument. As we read the trust instrument it was not Mr. Kirby's intention that anyone other than Ella Kirby and Tom Kirby receive any part of or any benefit from the stock of the Western Surety Company. Neither will the acquiring of the new shares by Tom Kirby increase his interest in the corporation over what it would have been had the new shares not been issued and he had received the number of shares referred to in the trust instrument. We quote again from the case of Gibbons v. Mahon, supra.

" 'Certificates of stock are simply the representative of the interest which the stockholder has in the capital of the corporation. Before the issue of these two hundred and eighty new shares, this trustee held precisely the same interest in this increased plant in the capital of the corporation that she held afterwards. She merely had a new representative of an interest that she already owned, and which was not increased by the issue of the new shares. A dividend is something with which the corporation parts, but it parted with nothing in issuing this new stock. It simply gave a new evidence of ownership which already existed. They were not in any sense, therefore, dividends for which this trustee had to account to the cestui que trust. She stood, after the issue of the new shares, just as she had stood before; and the trustee was obliged to treat them just as she did, namely, as a part of the original, and to pay the dividends to the cestui que trust.' "

So in this case we think the trustee holds these stock dividends as a part of the original stock that came into its hands following the death of Mr. Kirby, and under the trust

instrument it is to pay to Mrs. Kirby all income therefrom, and following her death deliver the stock together with the stock dividends to Tom Kirby. We are of the opinion that absent a contrary intention the giving of this specific stock to Tom Kirby carried with it all of the extraordinary stock dividends declared during the time the life interest is in existence. The right to the extraordinary stock dividends is one of the valuable rights attached to the ownership of stock, and we believe should and does pass with a gift of such stock, which is made subject to a life interest as to payment of income.

The judgment appealed from is affirmed.

All the Judges concur.