### FLYNN v. BROWNELL.

1. APPEAL AND ERROR—PLEADING—MOTION TO DISMISS.
   Each well-pleaded material allegation of bill of complaint must be accepted as true on appeal from order granting defendant's motion to dismiss.

2. WILLS—INTENT.
   Clear unambiguous language in a will needs no judicial construction to determine the testator's intent.

3. SAME—INCOME—CAPITAL—CASH DIVIDENDS—STOCK DIVIDENDS.
   Cash dividends, however large, are regarded as income, whereas stock dividends are considered as capital, in construing a will

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 879.
[2] 57 Am Jur, Wills § 1133 *et seq.*
[3] 57 Am Jur, Wills § 1196.
[4] 57 Am Jur, Wills § 1123.
[5] 57 Am Jur, Wills §§ 841–850, 1028.

providing for a different disposition of income of an estate than for capital.

4. COURTS—CONSTRUCTION OF WILLS—PRECEDENTS.

The decision of a court which does not overrule a prior adopted rule of construction of wills is construed as articulating what the law had been theretofore.

5. WILLS—CONSTRUCTION—INCOME—MOTION TO DISMISS.

Allegations of bill of complaint by life beneficiary under testamentary trust that fiduciary should pay over demanded returns on the corpus as income *held*, for purposes of deciding motion to dismiss, to have stated a cause of action entitling the plaintiff to present relevant and admissible evidence to assist the court in making determination as to testator's intent notwithstanding the bill was couched in conclusionary terms.

Appeal from Genesee; Roth (Stephen J.), J. Submitted March 8, 1963. (Calendar No. 86, Docket No. 49,886.) Decided September 4, 1963.

Bill by Louise Begole Flynn, life beneficiary under the will of Charles M. Begole, against Roy E. Brownell, successor trustee, and various individual remaindermen, to construe will. Bill dismissed on motion. Reversed and remanded for further proceedings.

*Pelavin, Gottlieb & Pelavin* (*Norman N. Gottlieb*, of counsel), for plaintiff.

*Ralph E. Gault* and *Edmund B. Brownell* for defendant Brownell.

*Gault, Davison & Bowers* (*Matthew Davison, Jr.*, of counsel), for defendants Cumings and others.

*Selby & DeCamp* (*Stacey DeCamp*, of counsel), for defendant Rice and others.

O'HARA, J. Charles M. Begole, in his lifetime was financially well circumstanced. He made testamentary disposition of his property in an instrument containing a number of specific charitable bequests,

a bequest in trust for plaintiff's decedent, and a residuary bequest. It is with the trust in its relationship to the residuary clause that we are here concerned. The trust was in the nature of a life interest in the investment return on the corpus. The concerned paragraph is hereinafter set forth in full:

"Sixth: — I give, devise and bequeath to the First National Bank at Flint Five Hundred Thousand Dollars of securities owned by me at the time of my death, such securities to be selected by it and when so selected to be held by it in trust for the following purposes: Immediately after my death, and on the selection of the securities by my said trustee herein named, my said trustee is to take possession of such securities, collect all income therefrom, keep the same invested and reinvested, using its best discretion for that purpose, pay all taxes assessed against the same and pay over to my said adopted daughter, Louise Begole Smith, during the term of her natural life, as fast as the same is received, the entire net income from such securities, such income when paid over to her to belong to her absolutely and unconditionally, and at her death, if she leaves a child or children surviving her, pay over to each child of hers surviving her the sum of Fifty Thousand Dollars, the same to belong to such child or children absolutely; pay over to the husband of my said adopted daughter, if he is alive at that time, the sum of Five Thousand Dollars, to be his absolutely and pay the balance over to Harriet E. Davison, Charles A. Cumings, Edward M. Cumings and Josiah W. Begole of the City of Flint, Michigan, and William B. Cumings of Otter Lake, Michigan, equally, provided they are all alive at that time, and to the survivors of them, if any of them have died before that time without issue, but if any of them have died before that time leaving children surviving them and such children are alive at that time, then the portion which would go to the parent of such

child or children, if living, shall go to such child or children by right of representation."

While still alive, the life beneficiary, original plaintiff here, filed a bill in equity to construe the trust, and for other relief. The bill was in 5 separate counts. One and 2 alleged that a demand was made upon the successor trustee to pay over certain returns on the corpus which plaintiff claimed were hers absolutely, payable instanter, and which the fiduciary was erroneously retaining for the remaindermen. Count 3 sought an order directing the fiduciary to divest the trust of certain high tax bracket securities. Count 4 prayed an order of a rather general nature ordering the trustee to reinvest some securities in higher return stocks, claiming the remaindermen were being favored over the life beneficiary. Count 5 alleged a conflict in interest between the duty of the fiduciary to the life beneficiary and his personal potential for gain by reason of his status as the husband of one of the remaindermen, and asks his removal.

To this bill the fiduciary and named remainderman filed a motion to dismiss on the ground that the bill stated no equitable cause of action.

The trial court granted the motion as to each of the 5 counts, assigning reasons for each. As to counts 3 and 4, the court held that the investment practices were within their recognized discretionary limits; that they had been subject to continuing supervisory control of the probate court which had been duly exercised. As to count 5, the chancellor determined that it was purely a conclusionary allegation of a potential for self benefit, and constituted no basis for equitable relief.

In disposing of counts 1 and 2, the trial judge held as follows:

"The language of the paragraph in question [the trust provision heretofore quoted] is plain enough and requires no construction; it says clearly that the plaintiff shall have the 'entire net income'; and what that phrase means has been resolved for Michigan by *In re Joy's Estate*, 247 Mich 418 (72 ALR 973), and subsequent cases. Stock script, stock purchase rights and stock dividends, our Supreme Court has ruled, are principal, not income."

To these holdings we must address ourselves with care. Our decision here is of abiding consequence not only to the parties here but is of important general application.

In the interest of clarity, we point out that plaintiff's life beneficiary died during the pendency of this litigation and her personal representative, the ancillary administrator of her estate, has been substituted as plaintiff. Earlier in the pendency of the trust, the named corporate trustee, First National Bank of Flint, went into receivership and defendant Brownell was named successor trustee.

Since the issue is before us on appeal from the granting of a motion to dismiss for failure to state a cause of action, it is elemental that for our purpose in deciding, we must accept as true each well-pleaded material allegation of the bill. See *L'Hommedieu v. Smith*, 351 Mich 223; *Mathews v. United Association of Journeymen*, 351 Mich 293 at p 298; 2 Callaghan's Michigan Pleading and Practice (1963 Cum Supp), chap 25, § 25.26, and cases there cited.

Antecedent this premise, however, is the fundamental question in every will construction case: Is the instrument ambiguous? Synonymously stated, the proposition is: Is the intent of the testator clear, requiring therefore no judicial construction of the instrument to determine that intent? ( See *Quarton v. Barton*, 249 Mich 474 [69 ALR 820].) The first ambiguity contended for by plaintiff is the use of the

phrase "entire net income." If this phrase as used by the testator is clear, plaintiff's case falls—more aptly perhaps it never rises in order to fall.

In support of her position, plaintiff urges:

(1) Net income is *per se* ambiguous. It does not distinguish between the various types of declared corporate returns on securities and that the use of "entire net" adds nothing by way of clarification.

(2) That while *In re Joy's Estate, supra,* and subsequent cases have defined the word "income" as it relates to trusts in Michigan, that definition adopted by us in 1929 is not reflective of the testator's intent in 1920 when he made his will, and that consequently plaintiff should be allowed to adduce proof of what that intention was.

Conversely argue the trustee and the remaindermen:

(1) The intent of the testator is manifest. He meant all cash dividends should be paid to the life beneficiary so long as she lived, and in whatever amount the increased corpus of the trust might provide. He was safeguarding her future by limiting her to usable cash return—and specifically *excluding* her from outright ownership of convertible stock interests. This they contend is clear from the intent of the whole instrument viewed from "its four corners" as against a legalistic piecemeal analysis of a single phrase.

(2) *Joy,* decided in 1929, was applied retrospectively in that case, the will having been drawn in 1908 and should be so applied here to the will drawn in 1920; that to do otherwise here would be "invidious discrimination and an intolerable paradox." That under well-recognized rules, the law as enunciated in *Joy,* since it overruled no prior holding, was a declaration of what the law always had been and the testator was presumed to have known what it was.

*In re Joy's Estate, supra,* clearly committed this State to the Massachusetts rule in the interpretation of what was there before the court, viz., the meaning of the phrase "the net revenues" of the residue of the estate and the status of "stock dividends" as capital rather than income. In the language of the case:

"A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital." *In re Joy's Estate, supra,* p 421.

We are not unmindful, nor have we failed to consider the argument so earnestly urged by counsel for plaintiff in brief and on oral argument that *Joy* was adopting a rule of law for Michigan as of the date of its decision; that the more generally accepted interpretative rule at the time of the execution of this instrument was the "Pennsylvania" rule, rejected by *Joy,* and that the testator should be presumed to have been guided by the then more generally accepted principle.

Two propositions inhibit the application of plaintiff's theory. First *Joy* did not overrule a prior adopted rule. This Court clearly distinguished between prior holdings dealing with stock dividends and the interpretation of the phrase "net revenues" from the residuary estate:

"While this Court has had occasion to consider wills, under the provisions of which stock dividends came into the hands of trustees, *we were able from the language used to ascertain the intent of the testator as to the distribution which should be made of them.*" (Emphasis supplied.) *In re Joy's Estate, .supra,* at p 420.

Hence, we must here conclude that *Joy* was not announcing a new rule but rather articulating what —as to the precise question presented—had been the law theretofore.

Secondly, and perhaps more persuasively and pointedly relevant to the question of the testator's intent—hence the lack of ambiguity, hence the absence of need for equitable construction—is the following language from *Joy,* at p 423:

"In common thought, we apprehend that the average man regards cash dividends as income and stock dividends as additions to his capital, and that he has this in mind when establishing a trust of this nature."

We think this language equally applicable today. The language of *Joy,* heretofore quoted, however, is limited to "cash dividends" and "stock dividends" both in the quotation heretofore set out and even more specifically in the order of remand which directs the probate court to enter an order "awarding the *stock dividends* in question to the residuary legatee." In his opinion the chancellor relegates stock scrip and stock purchase rights to the same category as "stock dividends." Assuming without here specifically deciding such to be the case, we cannot disregard what appellant denominates as stock dividends *and other similar accruing benefits.* We are not unmindful that in the more than quarter of a century that has passed since the decision in *Joy,* new corporate investment return techniques have been adopted. We mention "stock splits" as distinguished from "stock dividends" merely as 1 example. Without any record made below as to the specific nature of the various types of investment returns which were interpreted by the successor trustee to be income and which to be principal, we are hard put to decide the degree of applicability of the rule in *Joy* and the need, if any, to re-examine it. Admittedly, the bill of complaint in this and in other respects, is couched in conclusionary terms. However, keeping in mind that we still deal with the question of the sufficiency of the pleading to state an

equitable cause of action, we face again the long-standing controversy of what is a "conclusion of the pleader" and a "material fact." As noted in 2 Callaghan's Michigan Pleading and Practice, § 21.16, p 16:

"Frankly, the distinction between averments of ultimate fact and mere conclusions of the pleader is not always too easy to make. But the modern tendency is not to regard such distinctions too critically, and, as the supreme court of 1 of our neighboring States has well said, 'it will not do to pursue too far metaphysical distinctions between allegations of fact and conclusions of law.' " (*Flambeau River Lumber Co.* v. *Lake Superior Dist. Power Co.*, 200 Wis 31, 33, 34 [227 NW 276].)

We think for the purpose of the motion the bill of complaint sufficiently stated an equitable cause of action, and that an evidentiary record of whatever is relevant and admissible would be helpful to the trial court. This, we believe, is particularly true so far as the exact nature of those investment returns which were relegated to capital accretion and which to income. Helpful, too, would be any available and admissible evidence bearing on testamentary intent in the maintenance of the corpus of the trust at the value-figure specified in the trust instrument.

For the reasons hereinbefore specified, the order granting the motion to dismiss is vacated. The case is remanded for hearing.

Appellant may have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.